**Appeal of William Francis ESTES for Admission to the Oklahoma Bar by Examination.**

**No. SCBD 2553.**

Supreme Court of Oklahoma.

May 2, 1978.

James E. Work, Sp. Counsel, Oklahoma City (Shirk, Work, Robinson & Williams, Oklahoma City, of counsel), Annis Guffey Kernan, Asst. Sp. Counsel, Oklahoma City (McKinney, Stringer & Webster, Inc., Oklahoma City, of counsel), for Oklahoma Board of Bar Examiners.

Benjamin E. Stockwell, Norman, for applicant-appellant.

DOOLIN, Justice:

William Francis Estes (Applicant) appeals from a decision of the Board of Bar Examiners (Board) denying his application for admission to the Bar of the State of Oklahoma by examination.[1]

Applicant enrolled in the University of Oklahoma School of Law in the fall of 1970. After completion of two semesters, in September of 1971, he was indicted by a grand jury for the United States District Court of the Western District of Texas. He was taken into custody by federal marshals to

---

1. By special application to this court, applicant was permitted to sit for the June 1977 bar examination with the stipulation the results would be withheld pending this appeal.

answer charges of conspiracy to import marijuana into the United States from Mexico and pleaded guilty on two counts. He was sentenced to five years on each count to run consecutively and incarcerated in Indiana at the Terre Haute Honor Farm. Through a recommendation of the warden of that institution to the United States District Judge in Texas, he was resentenced in August of 1972 to an indeterminate sentence under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq. (the Act). Following his resentencing, he was released from the honor farm and sent to Seegoville Confinement Facility, a youth correctional facility in Texas, where he secured work release as a clerk with a Dallas attorney. He would leave the facility each morning at 7:00 A.M. and was required to return by 11:00 P.M. He was permitted to spend weekends with his family. He remained there about a year at which time he was conditionally released.

On July 3, 1975, pursuant to § 5021 of the Act,[2] the United States Board of Parole filed a certificate in the Texas Federal Court unconditionally setting aside his conviction and discharging him.[3]

Applicant was readmitted to law school and graduated with a Juris Doctorate in May of 1977. He was notified his application to be admitted to the Oklahoma Bar had been denied. He requested and received a hearing before the Board pursuant to 5 O.S.1977 Supp. Ch. 1, App. 5, Rule 11. After hearing, the Board issued its statement finding applicant had "failed to sustain his burden of proving that he has at this time the requisite good moral character and due respect for the law required for admission to the Bar of Oklahoma." Applicant appeals to this court.

In order to practice law in the State of Oklahoma, a person at the time of his application "shall have good moral character, due respect to the law * * * ".[4] Applicant claims he has affirmatively established the required good moral character and respect for the law. He submits the Board's denial is arbitrary, unreasonable and in disregard of the law and the facts as reflected in the transcript of testimony of the hearing.

An examination of the transcript by this court reveals no blemish on applicant's record in the six years since his indictment. Of the fifteen or so witnesses, not one knew of any reason why applicant should not be allowed to practice law. Each person knowing him who testified in his behalf, including a law professor, attorneys, fellow law students, neighbors and business associates, spoke of his high moral character. Those who dealt with him while he was

---

**2.** 18 U.S.C. § 5021 provides: "Certificate setting aside conviction—

(a) Upon the unconditional discharge by the Commission of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the Commission shall issue to the youth offender a certificate to that effect.

(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect."

**3.** The certificate provided: "Certificate Setting Aside Conviction—

It having been made to appear to the Youth Correction Division, United States Board of Parole, that WILLIAM F. ESTES, a committed youth offender, has received the maximum benefits from the Youth Corrections Act, and it being the opinion of the Youth Correction Division, United States Board of Parole, that his discharge from this commitment would be compatible with the welfare of society, it has been ORDERED by the said Youth Correction Division, United States Board of Parole, that said committed youth offender be UNCONDITIONALLY DISCHARGED.

In that such unconditional discharge is effective before the expiration of the maximum sentence heretofore imposed, it has been further ORDERED by said Youth Correction Division, United States Board of Parole, that his conviction be set aside pursuant to Section 5021, Title 18, U.S.Code, and this certificate is hereby issued pursuant to that Order."

**4.** 5 O.S.1977 Supp. Ch. 1, App. 5, Rule 1.

under federal supervision recommended his acceptance. The Dallas attorney who employed him while he resided in Seegoville, testified he was very impressed with his rehabilitation, repentance and integrity. He recommended his honesty and reliability very highly. A clinical psychologist (Ph.D.) found from tests and interviews that applicant was rehabilitated and of good moral character. There was not one shred of testimony or other evidence that would indicate other than exemplary conduct in the last six years.

In view of the overwhelming testimony in applicant's favor, the decision as to his moral character and thus his acceptance must hinge on the weight, if any, to be given to the indictment and guilty plea and the facts and circumstances leading to his conviction.

■ Applicant submits it was improper to consider the federal court proceedings and the circumstances leading to his arrest. He urges that under the majority of federal cases, setting aside of a conviction under the Act is an expungement and thus for legal purposes does not exist. The Board challenges applicant's right to protest, contending that because he attached a statement to his application informing Board of his conviction, he has waived his right to object to its consideration. We believe the Board had a right and a duty to consider all aspects of an applicant's character including the special circumstances of the crime, conviction, discharge and certification.

■ The Youth Corrections Act was designed by Congress for rehabilitation of youthful offenders to restore normal behavior patterns. The setting aside of the conviction enables young offenders to begin anew and serves as an inducement for him to become a law abiding citizen.[5] Courts differ as to the effect of setting aside of the conviction under § 5021.[6] We leave this decision to the federal courts. However, there seems to be no doubt the intent and purpose of the Act is to encourage rehabilitation which will prevent such a conviction from haunting the offender for life.

In *Tatum v. United States,* 114 U.S.App. D.C. 49, 310 F.2d 854 (1962) the court stated the Act appeared to provide greater relief for an offender than a presidential pardon. A person sentenced under this act could by virtue of his own good conduct, be spared the lifelong burden of a criminal record. The first circuit in *Mestre Morera v. United States Immigration and Naturalization Service,* 462 F.2d 1030 (1st Cir. 1972) interpreted the purpose of the Act to relieve an offender of the usual disabilities of a criminal conviction and to give him a second chance, free of a record tainted by the conviction. "Pardon and leniency at most restore to an offender his civil rights; neither is as clearly directed as the Youth Corrections Act toward giving him a second chance, free of all taint of a conviction."[7]

A more recent decision, *United States v. Fryer,* 402 F.Supp. 831 (N.D.Ohio 1975) held § 5021 expunged a defendant's record. It felt an offender discharged under this section should have the "same rights as other citizens never convicted," otherwise its purpose would be defeated. The sixth circuit affirmed at 545 F.2d 11 (6th Cir. 1976) approving the district court's language and stating that Congress did not intend the Act to set aside convictions for some purposes but not others. In order to allow the Act to fulfill its intended purpose, it must be read to give an offender a second chance free from any record of conviction.

In Oklahoma an attorney who has been disbarred for conviction of a crime involving moral turpitude or for any other reason, may file for reinstatement after five years.[8] Upon a showing of rehabilitation and

---

5. *United States v. Glasgow,* 389 F.Supp. 217 (D.D.C.1975).

6. See *Fite v. Retail Credit Co.,* 386 F.Supp. 1045 (D.Mont.1975); *United States v. McMains,* 540 F.2d 387 (8th Cir. 1976) for view record is not expunged.

7. *Mestre Morera v. United States Immigration and Naturalization Service,* supra, at p. 1032.

8. 5 O.S.1977 Supp. Ch. 1, App. 1, art. 10 § 18.

**980**

present good moral character, he may be readmitted. Surely the same consideration should be afforded this applicant. To ascribe controlling weight to applicant's prior illegal acts and little or no weight to the abundant evidence of his subsequent rehabilitation and present good moral character is error.[9] Applicant's resentencing under the Act and his discharge certificate issued through § 5021 are evidence of his rehabilitation and good faith.[10] This evidence along with his excellent testimonial references, convinces this court he should be admitted to the practice of law upon receipt of passing mark on his examination.

■ The burden was on Applicant to prove he had good moral character and due respect for the law. He has done so through members of the bar of two states, school teachers, a psychologist, neighbors, relatives and business acquaintances who testified in his behalf. He has shown this court that he has overcome the enormous obstacle of his own creation. Because of the blemish on his record he must be particularly conscientious in order to maintain in the future the good record of his past six years, and his continued right to practice law.

■ Under the circumstances here shown, where applicant has proved rehabilitation by overwhelming evidence and where *all* witnesses testify to his present moral character and respect for the law, we believe Board abused its discretion in refusing his application. Applicant met his burden of establishing his eligibility for admission to the Oklahoma Bar.

Reversed.

HODGES, C. J., and DAVISON, WILLIAMS and BERRY, JJ., concur.

LAVENDER, V. C. J., and IRWIN and SIMMS, JJ., dissent.

**9.** *In re Dreier*, 258 F.2d 68 (3rd Cir. 1958).

**10.** See generally Saperstein "Expungement for Youth Offenders" 83 Case & Com 3 (1978).