**In re Application of Gary Dale BEAN for Admission by Examination to the Oklahoma Bar Association.**

**Gary Dale BEAN, Bar Applicant,**

v.

**STATE ex rel. the OKLAHOMA BOARD OF BAR EXAMINERS, Respondent.**

**SCBD No. 3420.**

Supreme Court of Oklahoma.

Oct. 4, 1988.

Bruce H. Harlton, Tulsa, for Bar applicant.

Patrick H. Kernan, Tulsa, for respondent, Oklahoma Bd. of Bar Examiners.

ALMA WILSON, Justice:

The Oklahoma Board of Bar Examiners after a hearing rejected the application of Gary Dale Bean for admission by examination, finding that he had failed to establish that he had sufficient moral character, due respect for the law, and fitness to practice law required by Rule 1, Section 1 of the Rules Governing Admission to Practice of Law in the State of Oklahoma. 5 O.S. Supp.1987, ch. 1, app. 5. He now seeks relief from this Court.

The issues presented are: (1) Whether the applicant's constitutional rights under the Fifth and Fourteenth Amendments to the Constitution were violated by requiring him to prove the allegedly vague terms of good moral character, due respect for the law and fitness to practice law; (2) Whether the Board improperly refused to issue specific findings of fact and conclusions of law as required by Rule 11, Section 6; (3) Whether there was sufficient evidence to support the Board's denial of Mr. Bean's application; and (4) Whether one of the members of the Board should have disqualified from hearing the applicant's case as that member allegedly conducted an independent investigation and brought personal knowledge concerning the applicant into the hearing.

The Supreme Court of the United States has held that "a State has a constitutionally permissible and substantial interest in determining whether an applicant possesses ' "the character and general fitness requisite for an attorney and counselor-at-law." ' " *In re Griffiths*, 413 U.S. 717, 722–723, 93 S.Ct. 2851, 2855–56, 37 L.Ed.2d 910 (1973), citing *Law Students Civil Rights Research Council v. Wadmond*, 401 U.S. 154, 159, 91 S.Ct. 720, 724, 27 L.Ed.2d 749 (1971). The states are allowed "wide freedom to guage on a case-by-case basis the fitness of an applicant to practice law." *Griffiths*, 413 U.S. at 725, 93 S.Ct. at 2857.

■ This Court has stated in *State v. Booth*, 441 P.2d 405, 407 (Okla.1966):

The first qualification for licensure to the office of attorney at law is that such person be of good moral character, and particularly as respects the responsibilities and duties of an attorney. This requirement of good moral character is a continuing qualification, not only as a prerequisite for admission to the practice of law, but also necessary to entitle one to continue as a member of the Bar. This provided the basis for the adoption of the rule that a cause for disbarment occurs when an attorney ceases to possess the good moral character prerequisite to admission to the practice of law.

Therefore, cases involving disbarment of attorneys serve as notice to applicants to the bar of cause to refuse admission to practice. The burden of proving good moral character and due respect for the law is upon the applicant who must initially furnish sufficient evidence to establish a prima facie case. *Appeal of Evinger*, 629 P.2d 363, 367 (Okla.1981). The Board then has an opportunity to rebut such showing by presenting evidence of bad moral character and lack of respect for the law. *Evinger*, 629 P.2d at 367. The Board has a right and duty to consider all aspects of an applicant's character including conviction of crimes and any special circumstances including evidence of subsequent rehabilitation. *Appeal of Estes*, 580 P.2d 977, 979–980 (Okla.1978).

■ We conclude that the requirement of proving good moral character, due respect for the law and fitness to practice law, along with the case law of Oklahoma on disbarment and on admission to the bar provide the applicant with clear guidance, and that these requirements conform to the

constitutions of the United States, and of Oklahoma.

 The applicant complains that the Board refused to issue specific findings of fact and conclusions of law as required by Rule 11, Section 6; that the evidence was insufficient to support the Board's denial; and that a member of the Board brought personal knowledge concerning the applicant into the hearing. All three complaints can be addressed by calling applicant's attention to the fact that a review of a Board's decision which finds an applicant lacking in ethical fitness to practice law is considered *de novo* by this Court. *Application of Mailath*, 752 P.2d 803, 806 (Okla. 1988).

The Board found that the applicant lacked requisite fitness required by Rule 1, Section 1, and specifically mentioned their finding that applicant failed to establish that he was sufficiently rehabilitated at the present time from an admitted problem with alcohol. The transcript of the hearing reveals that the applicant called two witnesses to attest to his good character. One witness, a deputy chief in the Tulsa Police Department, testified that he knew of no incident since 1984 where the applicant had consumed alcohol or violated any law. However, the witness admitted that much of his opinion was based upon information supplied to him by his daughter, who had been dating the applicant. The other witness, a gaming commissioner for the Muskogee Creek Nation stated that he had come to know Bean on a close professional level having been his supervisor in the accounting and regulatory compliance area of an Indian bingo operation. Although he was aware of the applicant's drinking problem, he had never seen the applicant imbibe.

Most of the transcript records the testimony of the applicant. He stated the problems which he had experienced as a result of his drinking. On December 30, 1976, he was arrested and charged with carrying a weapon in a drinking establishment. The charge was later reduced to a misdemeanor, reckless handling of a firearm, to which he pled guilty and received a six month deferred sentence. This charge was later expunged. On December 13, 1979, he was arrested in a bar in Tulsa, and charged with public drunkenness, to which he pled guilty and paid a small fine. In July, 1982, he was arrested in Nichols Hills, charged with driving under the influence as well as simple assault. The charge was reduced to reckless driving and simple assault to which he pled guilty and paid a fine. In November, 1983, he was arrested in a Tulsa bar for public drunkenness. In January, 1984, he was arrested for public drunkenness and disturbing the peace at his ex-wife's home in Bixby. When she had refused to let him into her house, he became angry and broke out a window. He pled nolo contendere and paid a fine. On May 29, 1984, he was arrested for driving under the influence, a weapons charge, possession of marijuana, and possession of controlled drugs (valium). He pled guilty to the DUI charge and received a deferred one year sentence. At the end of one year, the charge was reduced to driving while impaired and the applicant paid a fine. The weapon and felony drug charges were dismissed at the preliminary hearing. Misdemeanor possession of marijuana and of controlled drugs were later refiled. The applicant pled guilty and received a six month suspended sentence and a fine.

As a condition of the deferred sentence on the DUI charge, the applicant attended an alcohol abuse school, where he testified that he became aware that he was an alcoholic. He testified that he has taken two steps to control his alcohol since that time, first, by drinking very little and then only on rare occasions, and second, by disassociating himself from people who put him in positions where he would be tempted to drink. He stated that his addiction had ruined three marriages and caused him to lose his professional career as a CPA. He has been a defendant in civil lawsuits, and explained to the Board that he is not sure whether or not his parental rights have been terminated to his two children for failure to pay child support. He assured the Board that even disappointment in being refused admittance to the bar association would not cause him to drink to excess

again. To the credit of the applicant, he appears to have been very candid with the Board.

Because this Court examines the entire record *de novo*, the applicant has not been injured by the Board's failure to issue more specific findings than they did, nor by any alleged independent investigation by a Board member. Any special knowledge by a Board member is not a part of this record and has not been considered by this Court. The testimony of the applicant is sufficient for this Court to make its own findings.

■ The applicant has related that his criminal law problems, his marital problems, and the loss of his career as a CPA was caused by his alcoholism. Although he states that he has not been intoxicated since 1984, he testified that he still drinks occasionally. After his bar examination ended, February 26, 1987, which was just five weeks before the hearing, he admitted that he had two drinks. Mr. Bean also testified that on July 20, 1985, at a Creek Nation pow-wow, he had consumed ten to fifteen beers but did not black out.

We find that the applicant has not met his burden of proving due respect for the law and fitness to practice law. The actions of the applicant in the past have shown a disrespect for the law, and we have grave concerns that applicant's failure to utilize professional help or established organizations for aid in controlling his alcoholism, in addition to his admitted failure to cease his consumption of alcohol would lead to omissions which would adversely affect potential clients. *See State v. Fore,* 562 P.2d 511 (Okla.1977). Having failed to meet his burden of proof, this Court affirms the decision of the Board of Bar Examiners, and Mr. Bean's application for admission is denied at this time.

HARGRAVE, V.C.J., and HODGES, LAVENDER, SIMMS and SUMMERS, JJ., concur.

OPALA, J., concurs in result.

OPALA, Justice, concurring in result.

I concur in today's pronouncement *only insofar* as the court finds—on *de novo*

review of the *entire* record—that the disclosed pattern of applicant's behavior during the critical years under inquiry shows him to lack those basic traits of human character which are absolutely essential for one's fitness as a licensed legal practitioner. I hence accede to the court's view that the applicant's quest for admission by examination should be denied.