STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

David O. DENTON, Respondent.

S.C.B.D. No. 2720.

Supreme Court of Oklahoma.

July 24, 1979.

Rehearing Denied July 24, 1979.

William E. Boswell, Jr., Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Clyde A. Muchmore, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for respondent.

DOOLIN, Justice:

Article X, § 4(b) of the Rules of the Oklahoma Bar Association [1] provides that:

"A member of the association who has been convicted in any jurisdiction of a crime involving moral turpitude regardless of whether conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal."

Respondent pleaded guilty in Kay County, Oklahoma, to two charges, one involving unlawful possession of amphetamines and one involving unlawful possession of marijuana. Sentence was deferred on the amphetamine charge and he was placed on probation without supervision for one year. That probation time expired in August of 1978, the case was dismissed by operation of law and his plea of guilty was expunged from the record. Because the expungement was prior to the date of the disciplinary proceeding, the trial authority found his plea could not be used against him by the Oklahoma Bar Association.[2]

The sentence on the charge of unlawful possession of marijuana was similarly deferred. However his probation time on this charge was two years and does not expire until August 1979. On this basis, that of the conviction of possession of marijuana alone, the trial authority found respondent to have pleaded guilty to a crime of moral turpitude and recommended that he be suspended from the practice of law for one (1) year.

The issue for decision by this Court is whether such recommendation should be approved. We are not bound by the trial authority's recommendation but may take any action which we deem appropriate.[3] Respondent pleaded guilty to a misdemeanor involving possession only. Does this involve moral turpitude and thus require discipline?

This court in *State ex rel. Oklahoma Bar Association v. Jones, 566 P.2d 130 (Okl.1977)* attempted to delineate the elements of moral turpitude. We stated moral turpitude implies something immoral in itself regardless of fact of whether it is punishable by law. Important elements are *intent* and *knowledge*. There can be no question under the conviction respondent is accountable

---

1. 5 O.S.1978 Supp. Ch. 1, App. 1.

2. See 63 O.S.1971 § 2–410.

3. Art. X, § 16(b) Rules of Oklahoma Bar Association.

for *intent* to possess the marijuana and *knowledge* that such possession is illegal. Moral turpitude is admittedly an elusive concept incapable of precise definition. Its definition may change with the times and vary from community to community.[4]

In Oklahoma, the primary purpose of discipline is not punishment, but purification of the bar and protection of the courts and the public generally. But this is not the sole purpose for discipline. It must also serve to deter respondent from committing similar acts in the future and it further acts as a restraining influence on other attorneys.[5]

We hold respondent's wilful misconduct in violation of the law of Oklahoma is a crime of moral turpitude under the definition of *State ex rel. Oklahoma Bar Association v. Jones, supra.* Thus he is subject to discipline under Rule 4(b).

A first time offender charged with unlawful possession of marijuana (a misdemeanor) has an opportunity to have his conviction expunged from the record.[6] Respondent's crime will be expunged by operation of law in August of 1979 if he meets the requirements of his probation. Although respondent must be disciplined, we believe a suspension for the length of his probation is adequate warning that this court does not condone such acts. This court has discretion in determining appropriate discipline.[7] It is therefore ordered David O. Denton be suspended until the date his deferred sentence is completed.

LAVENDER, C. J., and WILLIAMS, HODGES, BARNES and HARGRAVE, JJ., concur.

IRWIN, V. C. J., and OPALA, J., dissent.

SIMMS, J., concurs in result.

OPALA, Justice, dissenting:

The Bar's complaint rests on respondent's two violations of the Uniform Controlled Dangerous Substances Act.[1] Both criminal acts, *doubtless arising from a single arrest,* constitute a misdemeanor. One consists of unlawful possession of amphetamines and the other of marihuana.[2] As a basis for imposition of discipline the Bar alleges both offenses involve moral turpitude and "adversely reflect[ ] on [respondent's] fitness to practice law  .  .  .  ."[3]

The case was submitted on stipulated facts with exhibits. *No evidence was offered to show respondent's want of fitness to practice law.* We know nothing about the circumstances of his arrest or the quantity of substances seized from him. The record gives us no information about his age, background, maturity, past professional activity and performance or reputation. Nor does it reveal the extent of respondent's involvement, if any he have, with the use of controlled dangerous substances. Without knowledge of these critical facts I am unable to determine here whether or what professional discipline should be meted out.

Were I called upon to do no more than pass my *moral judgment* I would not hesitate to invoke my life-tested generational, social and cultural standards to pronounce, without hesitation, unequivocal condemnation of respondent's conduct. My *legal*

---

4. *In re Higbie*, 6 Cal.3d 562, 99 Cal.Rptr. 865, 493 P.2d 97 (1972); 58 C.J.S. Moral pp. 1200–1207.

5. *State ex rel. Oklahoma Bar Association v. Hall*, 567 P.2d 975 (Okl.1977).

6. 63 O.S.1971 §§ 2–402, 2–410.

7. *State ex rel. Oklahoma Bar Association v. Gresham*, 556 P.2d 264 (Okl.1976).

1. 63 O.S.1971 §§ 2–101 et seq. and 2–604 et seq.

2. 63 O.S.Supp.1972 § 2–402(B)2.

3. DR 1–102, Code of Professional Responsibility, 5 O.S.1971 Ch. 1, App. 3, provides in pertinent part:

"A lawyer shall not:

* * * * * *

(3) Engage in illegal conduct involving moral turpitude.

* * * * * *

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

*judgment* cannot be given as easily because it requires additional proof in order to apply a vastly different reasoning process.

The bare facts known to us unfold this chronology of events: (a) both violations occurred August 2, 1977; (b) charges were filed August 3, 1977; (c) guilty pleas to both charges were entered August 19, 1977; (d) deferred judgment and sentence with probation without supervision, rendered August 19, 1977, imposed one-year probation on the amphetamine charge (which was successfully completed August 19, 1978) and two-year probation on the marihuana charge (which will expire August 19, 1979)[4]; (e) Bar complaint was filed May 20, 1978; (f) trial authority was appointed June 6, 1978, and (g) disciplinary hearing was held August 24, 1978.

Trial authority's report, recommending one-year suspension from practice, rests on these findings and conclusions: (a) respondent's admitted guilt of unlawfully possessing marihuana is proof *per se* of moral turpitude and (b) respondent's unlawful possession of amphetamines cannot be a legal predicate for imposition of discipline because before this case stood submitted to the trial authority (on August 24, 1978) the period of probation on the amphetamine charge had ended (on August 19, 1978).[5]

With the passage of Uniform Controlled Dangerous Substances Act almost a decade ago, the policy of our law with respect to *first offenders in marihuana possession* cases underwent a *drastic change*. For these violators the offense itself has been reduced from a felony to a misdemeanor.[6]

Opportunity for a deferred, and ultimately conviction- and record-free disposition became available under special statutory provisions[7] which offer a shield of protection far beyond that available under our general deferment-of-sentence statute.[8] The expungement contemplated by the latter extends no further than "the verdict or plea of guilty", while the former statute appears to include "arrest or conviction" and offers the affected offender a veritable palladium for "any other public or private purpose". Nay, it makes the very illegal act obliterable in contemplation and by force of law.[9]

It is, no doubt, the broad and explicit language in the protective provisions of 63 O.S.1971 § 2–410 that led the trial authority to conclude the amphetamine possession had been so effectively obliterated from legal existence that it could no longer be used as a ground for disciplinary complaint. I am in complete accord with this conclusion.

My concern is that the course taken by the trial authority and by the court's opinion today withholds full faith and credit from post–1971 legislative *policy for first offenders charged with simple possession of marihuana.* Statutory distinctions between persons never before convicted of a drug offense (to whom the benefits of § 2–410 are intended to apply) and those who are subsequent violators stand rejected and the deliberate legislative policy of a "first bite free" is ignored. In fashioning and applying norms of rectitude for lawyers, we should remain ever mindful that because our inherent power to exercise disciplinary

---

4. These conviction-free dispositions, authorized by 63 O.S.1971 § 2–410 *for first offenders only,* allow dismissal and expungement of criminal record to follow completion of probationary period after a plea or verdict of guilty.

5. Pursuant to 63 O.S.1971 § 2–410 record of arrest or charge may not be used to adversely affect any person's license after there has been a "discharge and dismissal" on successful completion of probation.

6. Compare 63 O.S.1961 § 451 with 63 O.S. Supp.1972 § 2–402(B)2.

7. 63 O.S.1971 § 2–410. This statute authorizes the very criminal act to be obliterated following successful completion of probation.

8. 22 O.S.Supp.1976 § 991c. This statute allows only the guilty plea or verdict to be obliterated after completion of probation.

9. The shield available by the terms of 63 O.S. 1971 § 2–410 is vastly broader than that afforded by the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq. *In Appeal of Estes,* Okl., 580 P.2d 977 (1978), we found § 5021 of that Act sufficient in scope to obliterate from legal existence a turpitude-infected federal drug-offense conviction of felony.

jurisdiction calls on the judicial branch to function, at its highest level, in both legislative and adjudicative capacities,[10] we should not needlessly abandon harmony with the declared policy of the law. I find it entirely consistent with our constitutional responsibility to the public to maintain a safe and respectable profession that we recognize the beneficent objective of present-day legislative policy. Where, as here, it is doubtful or uncertain whether the Legislature intended to attribute moral delinquency[11] to a criminal act, *summary discipline is unwarranted.* Instead, a full inquiry as to fitness should be conducted.[12] Our own court applied this approach when dealing with conviction under an ambiguous federal statute.[13]

The pronouncement today does not leave the affected area of professional responsibility in a state more satisfactory than before. *In what is doubtless a case of first impression, the court has fashioned its process to discipline a first offender charged with simple possession of marihuana into an unwholesome race to capture, for summary suspension from practice, whatever few months may remain before the illegal act is erased from legal existence by the command of § 2–410.* This technique of problem-solving lacks rationality. It is similar to the deciding mechanism of ordeal. Bar sanctions are sought to be imposed hurriedly for a period coextensive with, or at least not to exceed, the length of § 2–410 probation, without regard to, or inquiry into, the offender's fitness to practice. I cannot endorse this approach. It is needlessly mechanistic and it does not serve to protect the public from unsafe lawyers.

Rather, I would treat a first offender's simple possession of marihuana charge for what it often is—a likely symptom of his involvement with the use of that or some other substance. Instead of summary discipline, I counsel a probe beneath the criminal phenomena on the surface to ascertain the seriousness and extent of the underlying involvement if any there be. Should one be found, I would then proceed to assay the effect it has on the person's fitness to practice. I would rest the Bar's charge on DR 1–102(6)[14] rather than on the "illegal act" [DR 1–102(3)][15] and in this way I would avoid both the strait jacket of summary procedure and the restriction on the extent of discipline that may be imposed without offending the proscription of § 2–410. The target of my inquiry would be not the "illegal act", ephemeral as it is in law, but the dangerous involvement's impact on fitness.

Another aspect of this case gives me serious concern. It is the trial authority's knowledge of so greatly damaging proof as the existence of another drug charge which was legally obliterated. Upon learning the charge was no longer available as a basis for discipline without offending § 2–410, the trial authority should have ordered it expunged from the Bar record and requested that another judge be appointed to proceed further in the case.

Lastly, there is here *no basis* in the record for reducing the length of respondent's suspension except the proscription in § 2–410 against extending sanctions beyond the end of probation. The court's leniency here is eloquent proof that the process shaped by today's pronouncement is so mechanistic

**10.** *In re Integration of the Bar,* 185 Okl. 505, 95 P.2d 113 (1939).

**11.** "Moral turpitude" is a tautology without precise definition. Its meaning depends on the definer and its English origin is of doubtful historicity. The term is like a shapeless vat into which judges pour content at will. *Jordan v. De George,* 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951); *Schmidt v. United States,* 177 F.2d 450, 451 (2nd Cir. 1949); *Corporation of Haverford College v. Reeher,* 329 F.Supp. 1196, 1206 (D.C.E.D.Penn.1971); *State v. Malusky,* 59 N.D. 501, 230 N.W. 735, 741 (N.Dak.1930).

Note, *Crimes Involving Moral Turpitude,* 43 Harv.L.Rev. 117 (1929).

**12.** *In re Hallinan,* 43 Cal.2d 243, 272 P.2d 768 (1954).

**13.** *In re Green et al.,* 161 Okl. 1, 16 P.2d 582 (1932).

**14.** See supra n. 3.

**15.** See supra n. 3.

that it has no rational relation to the purpose of professional discipline which is to protect the public from unsafe practitioners.

Because of its ephemeral appearance in the catalogue of crimes and serious doubt about legislative intent to attribute immorality to its commission, an illegal act that is obliterable under § 2–410 should not be considered *per se* turpitude-infected. For a meaningful and effective imposition of discipline, prosecution of first offenders shielded by § 2–410 protection should be rested on DR 1–102(6) instead of DR 1–102(3).

The case should be remanded for an inquiry into respondent's fitness as a legal practitioner.

I am authorized to state that IRWIN, V. C. J., concurs in these views.