1999 OK 17

**STATE of Oklahoma, ex rel., OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**John R. BLACKBURN, Respondent.**

**Nos. SCBD 4203, OBAD 1303, OBAD 1269, SCBD 4255.**

Supreme Court of Oklahoma.

March 9, 1999.

---

Mike Speegle, Asst. General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, For Complainant.

Danny Corn, Oklahoma City, Oklahoma, For Respondent.

SIMMS, J:

¶ 1 Oklahoma Bar Association disciplinary proceedings were brought against Respondent attorney, John Robert Blackburn on five counts of professional misconduct. A subsequent one count complaint was consolidated with the four counts listed in this surviving case.

¶ 2 Hearings were held before the Professional Responsibility Tribunal and the Tribunal recommended Respondent be suspended from the practice of law for 53 months, the approximate time remaining on his deferred sentences for two felony drug cases. Complainant, in its brief, recommends suspension of sufficient duration to allow review of Respondent's conduct and his continued abstinence from the use of alcohol and drugs.

¶ 3 Due to the serious nature of each count in this multi-count complaint and previ-

ous imposition of private reprimand and public censure, which apparently failed to adequately convey the import of the Rules of Professional Conduct (RPC), 5 O.S. Ch. 1, App. 3–A, and the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. Ch. 1, App. 1–A, we find Respondent should be disbarred.

¶4 The complaint against Respondent consists of the following. (1) In August 1995, Respondent plead nolo contendere to three counts of obtaining a controlled dangerous substance by fraud in Cleveland County. He received a five year deferred sentence. (2) In September 1995, Respondent plead nolo contendere to an additional three counts of obtaining a controlled dangerous substance by fraud in Oklahoma County. He received another five year deferred sentence, to run concurrently with the sentence received in the Cleveland County case. The Oklahoma Bar Association asserted Respondent violated Rule 8.4 (commit criminal act reflecting adversely on attorney's fitness as a lawyer) of the Rules of Professional Conduct with regard to these felonies.

¶5 (3) The third count of the complaint related to the mishandling of the personal effects of a client and alleged violations of Rules 1.1 (provide competent representation), 1.4 (communication/keep client reasonably informed) and 1.15 (safekeeping of client's property) of the Rules of Professional Conduct.

¶6 Ann Heatherly's two young daughters were killed by an automobile while on their way to school. Respondent represented Ms. Heatherly in the case which followed her daughters' deaths. In anticipation of possible settlement and trial, Respondent asked Ms. Heatherly to provide some personal items of her daughters; i.e., diaries, report cards, photographs, scrapbooks. Respondent failed to properly safeguard the items. After many months and repeated requests by Ms. Heatherly, Respondent was only able to return some of her daughters' things, while many of the items left in Respondent's charge completely disappeared.

¶7 (4) The fourth count of the complaint alleged violations of Rules 1.3 (act with reasonable diligence and promptness), 1.4 (com-munication/keep client reasonably informed), and 1.5 (fees/provide client with written statement at conclusion of contingency fee matter) of the Rules of Professional Conduct, and Rule 5.2 (upon request, provide written response with full and fair disclosure to bar association) of the Rules Governing Disciplinary Proceedings. This count arose out of Respondent's handling of Cherra Wilson's car accident claim. Respondent failed to provide a written accounting of the settlement funds and did not pay one of the medical care providers, causing Ms. Wilson to be sued for nonpayment of the medical bill. While the Professional Responsibility Tribunal found no misappropriation of settlement funds, the failure to provide a written settlement explanation and repeated failure to timely respond to the bar association's complaint caused the Tribunal to find violations of Rules 1.1, 1.4, and 1.5 of the RPC and Rule 5.2 RGDP.

¶8 (5) Count five was consolidated with the previous four count complaint and stems from the Respondent's representation of Patricia Whitfield. In 1993, Ms. Whitfield was sued for defamation and slander and hired Respondent to represent her in the case. Respondent filed an entry of appearance and answered the complaint against Ms. Whitfield, but failed to act any further on the case. A default judgment was entered against Ms. Whitfield, due to Respondent's inaction. Ms. Whitfield was forced to file bankruptcy, to which the judgment creditor in the slander case maintains an objection. In the Agreed Stipulations of Fact, Respondent stipulated to violations of Rules 1.1 (provide competent representation), 1.2 (scope of representation/abide client's decisions concerning objectives of representation), 1.3 (act with reasonable diligence and promptness), 1.4 (communication/keep client reasonably informed) and 8.4(c) (misconduct involving dishonesty, fraud, deceit or misrepresentation) with regard to the Whitfield complaint.

### I. Respondent's Felony Drug Offenses

¶9 Sometime in late 1992 to early 1993 the Oklahoma State Bureau of Narcotics was asked to investigate allegations that Respondent was obtaining prescription medications

through the practice of doctor shopping, seeing a number of physicians to obtain multiple prescriptions for narcotics. The Bureau began its investigation of Respondent approximately a year later in 1994. The investigation resulted in two, three count felony cases, one in Cleveland County and one in Oklahoma County, to which Respondent eventually plead nolo contendere and received concurrent five year deferred sentences in 1995.

¶ 10 Respondent testified that the murder of his wife in June of 1994 caused him to lose complete control of his life, including his practice, and drove him further into the abuse of prescription drugs. Respondent claimed that until his wife's death he was still able to function and maintain his practice.

¶ 11 It is the death of Respondent's wife under the most tragic of circumstances that caused Complainant to recommend something short of disbarment in the face of this multi-count complaint. Without this mitigation, the bar association said its recommendation for discipline would have been disbarment.

■ ¶ 12 Felony drug offenses are of great concern to this Court, both because of their criminal nature and because addiction prevents an attorney from adequately caring for the legal affairs of his clients, putting the public in danger. *See State ex rel. Oklahoma Bar Ass'n v. Denton,* 1979 OK 116, 598 P.2d 663, 665 (deferred sentence for possession of marijuana is a crime and warrants discipline); *State ex rel. Oklahoma Bar Ass'n v. Bradley,* 1987 OK 78, 746 P.2d 1130, 1133 (evidence of a nolo contendere plea and receipt of a deferred sentence was admissible and relevant in disciplinary proceeding relating to attorney's use of client funds); *State ex rel. Oklahoma Bar Ass'n v. Hogue, 1995 OK 64,* 898 P.2d 153 (attorney's guilty pleas for drug and alcohol related offenses were cause for six month suspension).

¶ 13 Respondent admitted his drug problems have continued in excess of twenty years. In fact, the investigation into Respondent's illegal prescription use began months before his wife's death and the initial inquiry occurred over a year prior to the Bureau's investigation. In addition, Ms. Heatherly's requests for her daughters' belongings began six months prior to Respondent's wife's death. Ms. Whitfield's case, which resulted in a default judgment, predates the death of Respondent's wife as well.

¶ 14 We also point with concern to the apparent fleeting nature of Respondent's previous periods of sobriety, one of which was apparently realized in 1991 to coincide with his public censure.

¶ 15 The evidence supports Respondent's testimony that his inability to deal with his wife's death spurred his professional misconduct, but the evidence also shows that Respondent was not competently attending to client matters even prior to June 1994.

## II. Safekeeping of Client Property

¶ 16 The Heatherly case settled in December 1993. Ms. Heatherly understood Respondent could return the children's things within a couple of weeks. In January, the client called requesting the return of the belongings and called repeatedly for the next four to six weeks to no avail.

¶ 17 Respondent told his client a variety of things concerning the whereabouts of her belongings: first, the box was at his brother's office, but the brother was moving his office, so the items were inaccessible; then Respondent claimed to have moved the box to his home, where he was operating his own office; sometime after moving the box to his home, Respondent and his wife separated and he was no longer living in the home, so he was unable to get the things; when Respondent's wife was killed approximately one month later, Respondent was unable to enter the home, as it was a crime scene.

¶ 18 Ms. Heatherly obtained a sheriff's escort into the house to look for her things, but found only one file relating to her case and none of her daughters' belongings. Sometime in October 1996, some of the items Heatherly had once given Respondent were returned to her, via the bar association. Ms. Heatherly said she did not know where the returned items were ultimately found and does not know if they were ever in Respondent's house.

¶ 19 Respondent's counsel protested, "Surely, Complainant does not suggest that a lawyer is ultimately responsible for absolute safekeeping of a client's property." However, Rule 1.15(a) RPC clearly requires client property to be identified and "appropriately safeguarded". Therefore, we hold the attorney is responsible for the safekeeping of his client's property. This is a responsibility Respondent clearly did not meet in Ms. Heatherly's case, violating Rule 1.15 of RPC.

¶ 20 The Court understands the unforeseeable death of Respondent's wife prevented access to the house after June 1994, but this does not explain Respondent's inaction and excuses for the preceding six months.

¶ 21 In addition to the Rule 1.15 violation, we find Respondent clearly and convincingly failed to act with appropriate attorney competence with regard to Ms. Heatherly's belongings, violating Rule 1.1 of RPC. Furthermore, Respondent failed to keep his client reasonably informed in response to her repeated requests for information concerning the whereabouts of her property, in violation of Rule 1.4 of RPC.

### III. Failure to Provide a Written Settlement Accounting and Failure to Respond to the Resulting Complaint

¶ 22 Ms. Wilson retained Respondent to represent her as a Plaintiff in a personal injury suit arising out of a car accident. Initially her complaint alleged an irregularity in the disbursement of settlement funds, believing Respondent had retained a larger portion than he was entitled to as her attorney. Investigation of the complaint revealed Respondent's disbursement of the settlement funds was accurate.

¶ 23 However, Respondent had consulted with his client regarding a medical bill which both he and Ms. Wilson believed was exceptionally high. Both agreed to withhold payment on this bill, in an effort to further negotiate with the provider regarding the charges. Respondent held the money to pay this bill separate from the remaining settlement funds, so the bill could be paid in the event it was not remitted. Ms. Wilson was eventually sued by the medical provider and was forced to obtain new counsel after repeated efforts to reach Respondent failed. To Ms. Wilson's surprise, Respondent appeared at a hearing relating to the nonpayment of the bill, at which time he signed the draft over to Ms. Wilson and her new attorney.

¶ 24 Ms. Wilson testified she was not aware of the specifics of her settlement or the disbursement, as she received no written explanation of the settlement breakdown. Respondent testified he did review the drafts with his client orally and the two had discussed the dangers of suit if the doctor was not paid.

> Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery showing the remittance to the client and the method of determination.

Rule 1.5(c) of RPC. Respondent failed to provide a written accounting at the conclusion of Ms. Wilson's case, violating Rule 1.5 of RPC. Respondent's failure to communicate with his client, which forced her to seek alternate representation, violated Rule 1.4 of RPC. When his client was sued, as Respondent knew she might be, it was Respondent's responsibility to act upon his client's repeated requests for information and explain the availability of the set aside funds. Simply making a surprise appearance at Ms. Wilson's hearing was not diligent representation. Respondent violated Rule 1.3 of RPC as well.

¶ 25 In September 1995, Respondent requested and was given additional time to respond to the complaint initiated by Ms. Wilson. Respondent failed to submit his response within the allotted time. Complainant eventually secured the response and a settlement accounting after serving Respondent with a subpoena. Rule 5.2 of RGDP requires a full and fair disclosure to the bar regarding all facts and circumstances pertaining to alleged misconduct. Respondent's failure to respond to the bar association until he was finally subpoenaed was a violation of Rule 5.2 RGDP.

#### IV. Neglect of Client Matter Results in Default Judgment

¶ 26 With regard to Ms. Whitfield's defamation and slander case, Respondent stipulated to violations of Rule 1.1, competence; Rule 1.2, scope of representation; Rule 1.3, diligence; Rule 1.4, communication; and Rule 8.4(c), misconduct. Respondent completely failed to act in Ms. Whitfield's case. He stipulated to ignoring pleadings. His failure to answer interrogatories or produce any defense resulted in a default judgment. The client discovered the default judgment as a result of the judgment creditor's attempts to collect, not from her own attorney.

¶ 27 Ms. Whitfield continues to deal with Respondent's neglect and lack of legal competence, having filed bankruptcy and contending with the bankruptcy protest made on behalf of the judgment creditor. The evidence clearly and convincingly supports Respondent's violations, as stipulated regarding the Whitfield complaint.

#### V. Enhancement

¶ 28 We note, as did the Professional Responsibility Tribunal, Respondent has been previously disciplined by the bar association. In April 1991, Respondent received a public censure for neglect of a legal matter in his charge and acting in conflict of interest on a divorce matter. Respondent entered a drug treatment program in 1989. This Court accepted Respondent's efforts to seek treatment as mitigation, imposing no suspension from the practice of law for the multiple count complaint in 1991.

¶ 29 Prior to the 1991 public reprimand, Respondent received a private reprimand for unprofessional conduct in 1987.

#### VI. Conclusion

¶ 30 In this case particularly, we want to stress the primary function of this Court in bar proceedings is to protect the public and not to punish Respondent. *See State ex rel. Oklahoma Bar Ass'n v. Denton,* 1979 OK 116, 598 P.2d 663; *State ex rel. Oklahoma Bar Ass'n v. Hall,* 1977 OK 117, 567 P.2d 975; *State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 1991 OK 88, 824 P.2d 1090, 1101; *State ex rel. Oklahoma Bar Ass'n v. Colston,* 1989 OK 74, 777 P.2d 920. While the death of Respondent's wife is a profound element of mitigation, the seriousness and repetitive nature of Respondent's professional misconduct must be dealt with in a manner that will best protect the public. As a result, disbarment is the only alternative. *See State ex rel. Oklahoma Bar Ass'n v. Holden,* 1996 OK 88, 925 P.2d 32, 36 (the Supreme Court's review in matters of bar discipline is de novo, the tribunal's findings, recommendations, and conclusions are not binding on the Court); *State ex rel. Oklahoma Bar Ass'n v. McCoy,* 1996 OK 27, 912 P.2d 856, 860 (the ultimate decision regarding attorney discipline rests with the Supreme Court, after de novo review of the record).

¶ 31 Pursuant to Disciplinary Proceedings Rule 6.16, cost of investigation, the record and disciplinary proceedings, in the amount of $1,036.65, are to be paid by Respondent within ninety days of the effective date of this opinion.

¶ 32 RESPONDENT DISBARRED AND ORDERED TO PAY COSTS.

HODGES, LAVENDER, OPALA, KAUGER and WATT, JJ., CONCUR.

HARGRAVE, V.C.J., CONCURS IN RESULT.

SUMMERS, C.J., CONCURS IN PART, DISSENTS IN PART: I would impose the same discipline as that recommended by the Professional Responsibility Tribunal.

ALMA WILSON, J., CONCURS IN PART, DISSENTS IN PART.