2003 OK 22

STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Monte L. SERATT, Respondent.

No. SCBD 4719.

Supreme Court of Oklahoma.

March 4, 2003.

Michael W. Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Monte L. Seratt, Tulsa, OK, for Respondent.

BOUDREAU, J.

¶1 Complainant, Oklahoma Bar Association, brought Rule 6 disciplinary proceedings against Respondent, Monte L. Seratt,[1] in a thirteen count complaint alleging client neglect, failure to competently represent his clients, acts of deceit and misrepresentation relating to both endorsing and paying settlement checks, repeated failure to adequately respond to the inquiries of the Oklahoma Bar Association and misrepresentation and deceit regarding his February 2002 deposition testimony at the bar association.

¶2 Two issues are presented in this disciplinary proceeding. First, was Respondent afforded due process in the disciplinary proceeding. Second, what is the appropriate discipline for Respondent's misconduct.

### I.  Due Process

¶3 Respondent appeared for a deposition at the bar center, in response to a subpoena, on February 6, 2002. At that time, he answered questions regarding a number of the grievances against him. He also promised written responses with regard to twelve client grievances that were not adequately explored at the deposition. Respondent never provided those responses. Accordingly, the bar association issued a subpoena for Respondent to appear at an April 8, 2002 deposition. Respondent did not appear for the April deposition.

¶4 On May 9, 2002, the bar association filed a formal complaint against Respondent relating to the clients and grievances discussed at the February deposition, as well as several matters not addressed at the deposition. The thirteen count Complaint was delivered to Respondent's office by certified,

---

**1.** Respondent's official Oklahoma Bar Association roster address is: Monte L. Seratt, OBA# 12857, 1601 S. Main, Ste. 305, Tulsa, Oklahoma 74119–4470.

restricted mail and signed for by Respondent on May 13, 2002. The complaint was accompanied by a letter from the bar association explaining to Respondent that he had twenty (20) days to file an answer and in the absence of an answer, the charges shall be deemed admitted. Respondent never responded to the formal complaint. Hearing on the complaint was set for July 2, 2002. Respondent also failed to appear at the July 2nd hearing.

¶ 5 The record in this disciplinary action does not conclusively demonstrate that the bar association successfully notified Respondent of the July 2nd hearing date. However, it does reveal the following efforts by the bar to do so. Using a process server, the bar attempted personal service on Respondent of a copy of the complaint shortly after Respondent received the complaint by certified mail in May 2002. The bar then mailed a motion to have the allegations deemed admitted to Respondent's office on June 13, 2002. On June 22, 2002, the bar mailed Respondent the trial panel selection. The bar initially mailed Respondent a copy of the notice of hearing by regular mail. On June 26, 2002, the bar association asked the process server to personally serve the notice of trial panel selection and notice of hearing, but he was unable to do so. In addition to the mailings and attempts at personal service, the bar's counsel repeatedly attempted to reach Respondent by phone, but was always unsuccessful. On the morning of the hearing, counsel tried phoning Respondent again and found the phone had been disconnected.

¶ 6 At the July 2nd hearing the bar presented evidence in support of its position that Respondent should be disbarred. At the hearing only the bar association investigator testified. Respondent was not present.

██ ¶ 7 Due process must be afforded an accused attorney in bar disciplinary proceedings. *See State ex rel. Oklahoma Bar Ass'n v. Minter*, 2001 OK 69, 37 P.3d 763, 773. The bar association must allege facts specific enough to put the accused attorney on notice of the charges of misconduct and give him an opportunity to respond to the alleged facts. *Id.; see also State ex rel. Oklahoma Bar Ass'n v. Johnston*, 1993 OK 91, 863 P.2d 1136, 1143.

Due process in disciplinary proceedings contemplates a fair and open hearing before a trial panel with notice and an opportunity to present evidence and argument, representation by counsel, if desired, compulsory process for obtaining favorable witnesses, information concerning the claims of the opposing party, reasonable opportunity to be heard, and the right to confront the unfavorable witnesses. (This does not mean that a lawyer may thwart discipline by wilfully failing to attend a disciplinary hearing.)

*State ex rel. Oklahoma Bar Ass'n v. Lobaugh*, 1988 OK 144, 781 P.2d 806, 811.

¶ 8 Respondent unquestionably received notice of the complaint when the bar association mailed him a copy by certified mail. Rule 6.4 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1 app. 1–A (RGDP), requires a Respondent to answer the complaint received within twenty days. In the event a Respondent fails to answer, as Mr. Seratt did in this case, "the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed." Rule 6.4 RGDP; *State of Oklahoma, ex rel. Oklahoma Bar Ass'n v. Meek*, 1996 OK 119, 927 P.2d 553 (Meek completely failed to respond to the complaint and did not attend the hearing; the allegations were deemed admitted); *See also State of Oklahoma, ex rel. Oklahoma Bar Ass'n v. Phillips*, 1990 OK 4, 786 P.2d 1242 (Phillips failed to respond to the complaint or appear at the scheduled hearing; he was suspended for three years). Because Seratt failed to respond to the complaint, the bar association proceeded in accordance with Rule 6.4, as if the charges of the complaint were admitted.

██ ¶ 9 Respondent was served with a formal complaint by the bar association detailing the nature of the grievances against him. The bar association made a number of attempts, by various methods, to inform Respondent of the hearing date to determine the discipline to be imposed. Respondent has a responsibility as a member of the bar to inform the bar association of his current address and any changes in his address or

location. *See State ex rel. Oklahoma Bar Ass'n v. O'Brien,* 1980 OK 81, 611 P.2d 650; *State ex rel. Oklahoma Bar Ass'n v. Prather,* 1996 OK 87, 925 P.2d 28. Respondent cannot thwart discipline by deliberately failing to respond to notices of the hearing date. The bar provided Respondent with the opportunity for fair and open hearing, but he chose not to avail himself of that opportunity. We conclude Respondent received due process in the disciplinary proceeding below.

## II. Grievances

### A. Count I, The Lockhead Grievance

¶ 10 Mr. Lockhead hired Respondent to represent him in a workers' compensation case after he was injured playing hockey as a professional hockey player. Respondent failed to respond to a motion filed by Lockhead's employer to terminate his temporary total disability benefits. Accordingly, Lockhead's employer terminated his benefits. After securing new counsel, Lockhead subsequently settled his claim. According to Lockhead, Respondent failed to cooperate with his new counsel in effecting the settlement. Eventually the court allowed the new counsel to endorse the settlement check on Respondent's behalf.

¶ 11 The bar association alleged Respondent's conduct violated Rules 1.1 (provide competent representation), 1.2 (abide client's wishes concerning objectives and scope of representation), 1.3 (act with reasonable diligence), 1.4 (communicate reasonably with client), and 3.2 (expedite litigation consistent with interests of the client) of the Rules of Professional Conduct, 5 O.S.2001 Ch. 1, app. 3–A (RPC).

### B. Count II, Dr. Fahey Grievance

¶ 12 In November of 2000, Respondent received a settlement check for a client which listed Dr. Fahey as a payee for purposes of medical expenses. Dr. Fahey asserted that Respondent did not inform him that he received the check, but instead forged Fahey's signature on the instrument. After Fahey signed a forgery affidavit and reported the matter to the Tulsa County Bar Association (TCBA), Respondent did pay Fahey's bill in September 2001. At his February deposition Respondent asserted that the timing of his payment to Fahey was merely coincidental and unrelated to the filing of the grievance.

¶ 13 The bar association alleged Respondent's conduct violated Rules 1.1 (provide competent representation), 1.2 (abide client's wishes concerning objectives and scope of representation), 1.3 (act with reasonable diligence), 1.4 (communicate reasonably with client), and 8.4(c) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation) of the RPC and Rule 5.2 of the RGDP (general investigation procedure, failure to respond to inquiry is grounds for discipline).

### C. Count III, The Yocham Grievance

¶ 14 Ms. Yocham retained Respondent after a 1999 car accident. She asserted in her grievance that Respondent only spoke with her once and she received no updates regarding her personal injury case. Although records indicate Respondent filed a petition, prior to the lapse of the statute of limitations, the records do not indicate Respondent filed a summons or attempted to serve the responsible party.

¶ 15 The bar association alleged Respondent's conduct violated Rules 1.1 (provide competent representation), 1.2 (abide client's wishes concerning objectives and scope of representation), 1.3 (act with reasonable diligence), 1.4 (communicate reasonably with client), and 1.16 (terminating representation properly) of the Rules of Professional Conduct, and 5.2 (failure to respond to bar association's inquiry is independent grounds for discipline) of the RGDP.

### D. Count IV, The Torrico Grievance

¶ 16 Mr. Torrico retained Respondent in November 2000 to represent him in an auto accident case. Respondent failed to show up for two scheduled office meetings and wrongfully claimed attorney fees on medical payments from the client's insurance company, forcing Mr. Torrico to pay some of the medical expenses from his own pocket. Mr. Torrico then filed a complaint with the TCBA and the matter was eventually forwarded to the state bar.

¶ 17 Respondent provided a response to the Tulsa County Bar, but failed to respond to the state bar's inquiry. He was eventually served a subpoena and deposed about the allegations of Mr. Torrico's grievance. At that time, Respondent said he did not realize the state bar association required him to make separate and additional responses to those he already forwarded to the TCBA.

¶ 18 The bar association alleged Respondent's conduct violated Rules 1.1 (provide competent representation), 1.2 (abide client's wishes concerning objectives and scope of representation), 1.3 (act with reasonable diligence), 1.4 (communicate reasonably with client), and 1.5 (an attorney must charge reasonable fees) of the RPC and Rule 5.2 (failure to respond to bar association's inquiry is independent grounds for discipline) of the RGDP.

### E. Count V, The Clute Grievance

¶ 19 Ms. Clute hired Respondent in 2001 to represent her in an auto accident case. During the course of the representation, Respondent suggested she rent a car and implied it would be paid for by the insurance company. Ms. Clute rented the car for several weeks, but only a fraction of the bill was ultimately paid by the insurance carrier. In addition, Respondent held Ms. Clute's insurance settlement check for over three months, only forwarding it to her when she filed a grievance with the TCBA.

¶ 20 Respondent repeatedly failed to answer inquiries from the bar association about Ms. Clute's complaint. At his deposition he acknowledged that he advised Ms. Clute to rent the car because he believed the insurance carrier should pay for it, although he did not have such approval from the carrier. Respondent explained he was not withholding the check from his client, but simply did not want to endorse it as full payment, because he believed it to be insufficient. Respondent also stated he sent Ms. Clute the settlement check after she fired him, not because she filed a grievance.

¶ 21 The bar association alleged Respondent's conduct violated Rules 1.1 (provide competent representation), 1.2 (abide client's wishes concerning objectives and scope of

representation), 1.3 (act with reasonable diligence), 1.4 (communicate reasonably with client), 1.5 (an attorney must charge reasonable fees), and 1.15 (safekeeping of property) of the RPC and Rule 5.2 (failure to respond to bar association's inquiry is independent grounds for discipline) of the RGDP.

### F. Count VI, The Miller Grievance

¶ 22 Ms. Miller engaged Respondent to represent her in an auto accident case. Ms. Miller never met Respondent but only spoke with him by phone. She found him extremely difficult to contact and unresponsive to her concerns about her case. She fired Respondent by phone in 2001, after her doctor recommended she get another attorney. She subsequently filed a grievance against Respondent with the TCBA, which was later referred to the state bar. Respondent did not respond to the state bar association's inquires about the complaint.

¶ 23 When questioned about the Miller grievance at his deposition, Respondent admitted there were some clients he never met until he gave them their money. He provided no explanation for not meeting Ms. Miller and was not able to answer any specific questions regarding her grievance, because he failed to bring her file to the deposition.

¶ 24 The bar association alleged Respondent's conduct violated Rules 1.1 (provide competent representation), 1.2 (abide client's wishes concerning objectives and scope of representation), 1.3 (act with reasonable diligence), 1.4 (communicate reasonably with client), and 1.5 (an attorney must charge reasonable fees) of the RPC and Rule 5.2 (failure to respond to bar association's inquiry is independent grounds for discipline) of the RGDP.

### G. Count VII, The Dr. Cate Grievance

¶ 25 Dr. Cate had several patients who were also clients of Respondent's. Cate alleged that Respondent forged his signature, as well as the signatures of the clients, on settlement checks. Cate complained that Respondent settled two cases in which he failed to pay either the client or his medical fee. In a third case, Cate asserted that

Respondent paid the client but failed to pay him. Respondent paid the medical bills after Dr. Cate filed a grievance with the TCBA.

¶ 26 Respondent answered questions about Cate's grievance at the February 2002 deposition. At that time, Respondent denied that Cate's grievance with the TCBA had anything to do with the timing of his payments to Cate for the clients' medical bills. Respondent asserted he received Cate's endorsement authority over the phone from one of Cate's office employees. He testified that his routine practice with Dr. Cate's office was simply to handle endorsement authority by phone. He acknowledged however that he had no written verification of the practice.

¶ 27 The bar association alleged Respondent's conduct violated Rules 1.1 (provide competent representation), 1.2 (abide client's wishes concerning objectives and scope of representation), 1.3 (act with reasonable diligence), 1.4 (communicate reasonably with client), 1.15 (safekeeping property), and 8.4(c) (engage in conduct involving dishonesty) of the RPC and Rule 5.2 (failure to respond to bar association's inquiry is independent grounds for discipline) of the RGDP.

### H. Count VIII, the Gulliver Grievance

¶ 28 Mr. Gulliver was injured in a car accident and hired Respondent to represent him in 1998. Gulliver wanted Respondent to pursue both a third party tort claim and workers' compensation claim as a result of the accident. Gulliver's workers' compensation claim was denied in May 2000. According to Gulliver, Respondent agreed to appeal the decision, but failed to do so allowing the appeal time to lapse. Gulliver says he has not heard from Respondent since the compensation hearing. He also states he has received no explanation from Respondent regarding his failure to file an appeal.

¶ 29 Respondent filed a tort claim on behalf of Gulliver in 2000, but failed to issue a summons.

¶ 30 Respondent failed to respond to letters from the bar regarding Mr. Gulliver's grievance and failed to attend a deposition scheduled for April 8, 2002, at which he was to answer questions regarding this grievance.

¶ 31 The bar association alleged Respondent's conduct violated Rules 1.1 (provide competent representation), 1.2 (abide client's wishes concerning objectives and scope of representation), 1.3 (act with reasonable diligence), and 1.4 (communicate reasonably with client) of the RPC and Rule 5.2 (failure to respond to bar association's inquiry is independent grounds for discipline) of the RGDP.

### I. Count IX, Failure to Provide Information Promised in Course of Investigation

¶ 32 At the February 2002 deposition, Respondent promised to provide within fourteen days written responses to complaints relating to twelve patients of Dr. Cate, who were also clients of Respondent. Respondent never provided the responses.

¶ 33 The bar association alleged that Respondent's conduct violated Rule 5.2 of the RGDP, which provides that an attorney's failure to respond to inquiry from the bar association regarding investigation of a complaint is in itself grounds for discipline.

### J. Count X, Dusenbury Grievance and Insufficient Funds in Trust Account

¶ 34 Ms. Dusenbury retained Respondent to represent her. She contacted Respondent in May 2001 asking of the status of her case. According to her, Respondent replied that he had not yet heard from the insurance company. He did not follow up on the call until September 2001, at which time Ms. Dusenbury says Respondent told her a $50,000 settlement was "due and payable" on the uninsured motorist coverage, but there was a policy stacking issue still unresolved in the case. She contacted Respondent again in December 2001, at which time he told her the money might be in around Christmas. Ms. Dusenbury attempted, but was unable to contact Respondent until mid-January, at which time he said he had just received the $50,000 from the insurance carrier. About a week later, Ms. Dusenbury spoke to Respondent's secretary; the secretary told her that Respondent had in fact received the $50,000 on May 21, 2001, the year before. Ms. Dusen-

bury demanded immediate payment from Respondent of the approximately $33,000 owed her. In late January 2002, Respondent provided her two checks, one in the amount of $4500 and another for almost $29,000. The larger check did not clear Respondent's trust account due to insufficient funds. Ms. Dusenbury informed Respondent she would press charges if she was not paid immediately and Respondent wired the money to her account. Ms. Dusenbury filed a grievance against Respondent.

¶ 35 At the February 2002 deposition, Respondent signed a waiver allowing bar investigators to access his trust account records. Respondent's trust account records show the Dusenbury check of $50,000 was deposited in May 2001. Although Ms. Dusenbury was entitled to approximately $33,000 of that sum, the November 2001 balance in the trust account reflected just over $14,000. In December 2001, the balance reflected just under $9,000. In January 2002, the trust account records reflect three deposits totaling almost $57,000. At the end of that month, the balance was less than $32,000, an amount insufficient to cover the Dusenbury drafts Respondent issued only a few weeks later. As a result, the bar concluded that Respondent spent Dusenbury's settlement proceeds and subsequently paid her with other client funds.

¶ 36 The bar association alleged Respondent's conduct violated Rules 1.1 (provide competent representation), 1.2 (abide client's wishes concerning objectives and scope of representation), 1.3 (act with reasonable diligence), 1.4 (communicate reasonably with client), 1.15 (safekeeping property), and 8.4(c) (engage in conduct involving dishonesty) of the RPC and Rule 5.2 (failure to respond to bar association's inquiry is independent grounds for discipline) of the RGDP.

### K. Count XI, the Perry Grievance

¶ 37 Mr. Perry hired Respondent after an auto accident in 1999. He had no communication with Respondent for almost two years. In January 2002, Respondent contacted Perry to inform him of a proposed settlement. Perry says Respondent advised him to take the settlement. Perry stated that although he signed paperwork relating to the settlement, he never again heard from the Respondent. Perry later discovered that Respondent had deposited a settlement check for $13,750 in his trust account on January 16, 2002. On February 19, 2002, Respondent's trust account balance was less than $300, as Ms. Dusenbury had been paid from those funds the week before. As of the hearing date in July 2002, Mr. Perry had yet to receive funds from his settlement.

¶ 38 The bar association alleged Respondent's conduct violated Rules 1.1 (provide competent representation), 1.2 (abide client's wishes concerning objectives and scope of representation), 1.3 (act with reasonable diligence), 1.4 (communicate reasonably with client), 1.15 (safekeeping property), and 8.4(c) (engage in conduct involving dishonesty) of the RPC and Rules 1.3 (acts that bring discredit on the legal profession) and 1.4(b) (where money is entrusted to an attorney for a specific purpose, it must be used for that purpose) of the RGDP.

### L. Count XII, The Traylor Grievance

¶ 39 Mr. Traylor hired Respondent after a car accident in 2000. He amassed medical costs in excess of $25,000 and lost wages in excess of $20,000 stemming from the accident. Traylor claims Respondent settled his medpay claim for $1000, forged his signature to the check and paid him nothing. In February and March 2001, Respondent settled the liability and uninsured motorist claims for approximately $35,000. Traylor said Respondent again forged his name to the checks and that he received nothing. Records indicate Respondent paid approximately $6000 of Traylor's medical bills, but Traylor still owes over $19,000 in unpaid medical bills. In February 2002, Traylor was still unpaid and Respondent's trust account balance was less than $300.

¶ 40 The bar association alleged Respondent's conduct violated Rules 1.1 (provide competent representation), 1.2 (abide client's wishes concerning objectives and scope of representation), 1.3 (act with reasonable diligence), 1.4 (communicate reasonably with client), 1.15 (safekeeping property), and 8.4(c) (engage in conduct involving dishonesty) of

the RPC and Rules 1.3 (acts that bring discredit on the legal profession) and 1.4(b) (where money is entrusted to an attorney for a specific purpose, it must be used for that purpose) of the RGDP.

### M. Count XIII, Perjury at February 2002 Deposition

¶41 Respondent testified at his February 2002 deposition that he waited long periods of time between receiving settlement proceeds and paying his clients in order to negotiate lower medical bills with his clients' medical providers.

¶42 After obtaining Respondent's trust account records, the complainant contends Respondent was actually embezzling money from prior cases to pay a present demand. As a result, the bar alleges that his testimony under oath regarding the benefit of negotiating with medical providers was perjury and clearly not the true reason for the delays and nonpayment his clients experienced.

¶43 The bar association alleged Respondent's conduct violated Rule 8.4(c) (engage in conduct involving dishonesty) of the RPC and Rule 5.2 (failure to respond to bar association's inquiry is independent grounds for discipline) of the RGDP.

### III. Discipline

¶44 Due to the application of Rule 6.4 of RGDP, Respondent's failure to respond to the thirteen count complaint results in the allegations of the complaint being deemed admitted. The bar association spent the majority of the July 2002 hearing focusing on the deficiencies in Respondent's trust accounting. In the course of the hearing the bar requested Respondent be disbarred for the serious and frequent nature of the offenses.

¶45 This Court possesses original and exclusive jurisdiction in bar disciplinary proceedings. Rule 1.1 RGDP. This Court's review is by de novo consideration of the entire record. *State ex rel. Oklahoma Bar Ass'n v. Weeks,* 1998 OK 83, ¶12, 969 P.2d 347, 351. The Tribunal's findings, conclusions of law, or recommendations of discipline are not binding on this Court. *State ex rel.*

*Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, 914 P.2d 644, 648. "The ultimate responsibility to impose discipline in a case before this court is ours alone." *Id.*

¶46 This Court's primary function in bar disciplinary proceedings is not to punish, but rather to protect the public and determine an attorney's continued fitness to practice law. *State ex rel. Oklahoma Bar Ass'n v. Donnelly,* 1992 OK 164, 848 P.2d 543, 546; *State ex rel. Oklahoma Bar Ass'n v. Mayes,* 1999 OK 9, 977 P.2d 1073, 1082; *See also State ex rel. Oklahoma Bar Ass'n v. Denton,* 1979 OK 116, 598 P.2d 663; *State ex rel. Oklahoma Bar Ass'n v. Hall,* 1977 OK 117, 567 P.2d 975; *State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 1991 OK 88, 824 P.2d 1090, 1101; *State ex rel. Oklahoma Bar Ass'n v. Colston,* 1989 OK 74, 777 P.2d 920. In fact, at the February 2002 deposition Respondent expressed his own doubts about his ability to effectively represent his clients. The fact Respondent has been unable or unwilling to communicate with the bar or his clients since his February deposition only makes it more clear that he cannot effectively manage his business affairs or his practice.

¶47 The report of the Professional Responsibility Tribunal focuses primarily upon the misuse of client funds entrusted to Respondent and recommends Respondent be disbarred. The report of the Tribunal specifically refers to the Drs. Fahey and Cate grievances, as well as the Dusenbury, Perry and Traylor complaints. The report of the Tribunal makes no reference to violation of Rule 8.4(c) of the RPC and the corresponding perjury allegation of the bar association. Its recommendation is as follows:

On August 26, 1994, the Respondent was disciplined by private reprimand for neglecting a case to the point that it was dismissed with prejudice, by the court. The allegations in the present case, which are deemed admitted, include the most egregious forms of neglect and misuse of a client's trust. Monte L. Seratt's conduct is wholly inconsistent with the rules of professional conduct and the values of the legal profession. This reprehensible conduct has persisted despite repeated complaints and previous censure and it is

therefore the recommendation of this Tribunal that Monte L. Seratt be disbarred.

¶ 48 We conclude that the record of disciplinary proceedings supports a finding by a clear and convincing evidentiary standard that Respondent violated Rule 1.1 (failure to competently represent his clients), Rule 1.2 (duty to consult with clients regarding representation and settlements made on their behalf), Rule 1.3 (failure to exercise due diligence in representing his clients), Rule 1.4 (failure to communicate with his clients), Rule 1.5 (charging reasonable fee for work performed), Rule 1.15 (failure to account for funds coming into Respondent's possession for clients and medical providers of clients and failure to deliver over such money upon demand by the clients and medical providers), Rule 1.16(d) (take steps upon termination of representation to protect client's interests and cooperate in settlement matters) of the Rules of Professional Conduct and Rule 1.4(d) (attorney receiving funds for a specific purpose must use funds for that purpose) and Rule 5.2 (failure to cooperate in the grievance process itself) of the Rules Governing Disciplinary Proceedings. We do not find clear and convincing evidence of perjury allegedly committed by Respondent at the February 2002 deposition and decline to impose discipline for violations alleged in Count XIII of the complaint.

¶ 49 Respondent's neglect of his clients' affairs and his failure to acknowledge and respond to the authority of the Oklahoma Bar Association are in themselves violations serious enough to warrant Respondent's suspension from the practice of law for a considerable period of time. When these violations are coupled with Respondent's inability to properly care and account for his clients' settlement proceeds or to protect their interests from unyielding statutes of limitations, this Court is given no alternative but disbarment. *See State of Oklahoma, ex rel. Oklahoma Bar Ass'n v. McCurtain,* 1989 OK 4, 767 P.2d 427 (attorney who neglected client matters, converted or failed to properly account for client property and refused to cooperate with the investigation of those matters was disbarred); *See State of Oklahoma, ex rel. Oklahoma Bar Ass'n v. Hardey,* 1972 OK 49, 495 P.2d 825 (attorney who settled cases without the knowledge of his clients, forged client signatures to settlement checks and did not properly account for settlement proceeds was disbarred); *See State of Oklahoma, ex rel. Oklahoma Bar Ass'n v. Thomas,* 1995 OK 145, 911 P.2d 907 (attorney disbarred for neglecting client's workers' compensation case, misrepresenting the status of the case to the client over an extended period of time, forging an order of the Supreme Court, failing to answer grievances and negotiating with a client not to report misconduct to the bar association).

¶ 50 Respondent provided this Court no mitigating evidence to consider in his favor with regard to the imposition of discipline. We note he was privately reprimanded in 1994 for failure to competently represent a client and is currently under an order of suspension for non-payment of dues.

¶ 51 Respondent is disbarred and his name is ordered stricken from the roll of attorneys. In addition, he is ordered to pay the costs of these proceedings in the amount of $2,608.29 within ninety (90) days after this Court's opinion becomes effective.

¶ 52 RESPONDENT IS DISBARRED AND HIS NAME IS STRICKEN FROM THE ROLL OF ATTORNEYS. HE IS FURTHER ORDERED TO PAY COSTS IN THE AMOUNT OF $2,608.29 WITHIN NINETY (90) DAYS AFTER THIS OPINION BECOMES EFFECTIVE.

ALL JUSTICES CONCUR.