2001 OK 28

**In the Matter of the REINSTATEMENT OF Kenneth L. HIRD, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

SCBD No. 4397.

Supreme Court of Oklahoma.

March 20, 2001.

Phil R. Richards, Gwendolyn L. Clegg, Richards & Connor, Tulsa, OK, for Petitioner, Kenneth L. Hird.

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, for Respondent, Oklahoma Bar Association.

HODGES, J.

¶ 1 Petitioner Kenneth L. Hird (Hird) is seeking reinstatement to membership in the Oklahoma Bar Association (OBA) after resigning in 1992. The 1992 resignation was based on his guilty plea to felony charges for money laundering and bank fraud. The OBA opposes Hird's reinstatement. After conducting a hearing, the Professional Re-

sponsibility Tribunal (PRT) reluctantly recommended that Hird be reinstated.

## I. FACTS

¶ 2 Hird was admitted to the practice of law in Oklahoma in 1980. After being admitted, Hird was in private practice for about three years, was general counsel for a corporation for about two years, and then returned to private practice. When he was about 30 years of age, Hird was employed by Caprock Savings and Loan (Caprock). At Caprock, he simultaneously held the titles of executive vice-president, general counsel, chief lending officer, and secretary of the board.

¶ 3 While Hird was employed at Caprock, the real estate market took a downward turn. In order to bolster the financial status of Caprock during this period, Hird became involved in a fraudulent scheme to make Caprock appear to be better capitalized than it actually was. Because of the scheme, Caprock's precarious financial situation was not apparent or easily discoverable causing the Federal Examiners to be misled about Caprock's financial condition. The loss to Caprock as a result of the scheme was in the tens of millions of dollars. When Caprock became insolvent, the Federal Savings and Loan Insurance Corporation made payments to Caprock's depositors of millions of dollars.

¶ 4 Hird admits that he personally profited about $260,000.00 through the transactions related to the fraudulent scheme. After he left Caprock and returned to private practice, Hird received $150,000.00 retainer from one of the other parties to the scheme. He did not perform any work for the party. In 1995, Hird filed for bankruptcy, and his debts were discharged in 1996.

¶ 5 Prior to Caprock's collapse, Hird resigned from Caprock and returned to private practice. In April of 1991, an indictment was filed against Hird and several other defendants. In May of 1992, Hird pled guilty to one count of bank fraud and one count of money laundering. Based on Hird's cooperation he was sentenced to 45 months incarceration rather than the 63 to 78 months under the federal sentencing guidelines. Under the guidelines, Hird was subject to a fine ranging from $203,062.00 to $500,000.00. The fine

and restitution were waived based on Hird's cooperation with the federal government.

¶ 6 In June 1992, Hird notified the OBA of his conviction and tendered his resignation. A few days later, Hird surrendered himself to the custody of the Federal Bureau of Prisons. On September 28, 1993, this Court approved Hird's resignation pending disciplinary proceedings. *State ex rel. Oklahoma Bar Ass'n v. Hird,* 1993 OK 120, 863 P.2d 1160.

¶ 7 During his incarceration, Hird volunteered as a tutor for Graduate Equivalence Degree (GED) classes and teaching Bible classes. In February of 1994, the United States Attorney filed a motion to reduce Hird's sentence by 17 months. As a result of the United States Attorney's motion being granted, Hird's sentence was further reduced to 27 months imprisonment. Hird was placed on three years probation which he successfully completed after serving 24½ months incarceration.

¶ 8 After his release from prison, Hird returned to Tulsa and worked as a law clerk for his former law partner for about one year. Then he worked at Transvoc, Inc., an employment placement service for the developmentally disabled, where he became a program coordinator. Hird resigned from his job at Transvoc in anticipation of a state job. When the state job did not materialize, Hird registered with a temporary employment agency. He was placed with Oklahoma Fixture Company as a glass packer. In March 1997, Oklahoma Fixture Company offered Hird a permanent job as the human resource director. Then in August of 1998, Hird was promoted to human resource director of the parent company.

¶ 9 Hird admits his responsibility for the bank fraud and money laundering. His witnesses testified that he understands what he did was wrong and that he accepts responsibility for his actions. They also testified that Hird has been humbled by the consequences resulting from his actions.

¶ 10 According to the record, particularly the testimony of the witnesses, Hird has been a model citizen since his release from prison. He has been open about his convic-

tion and incarceration with his employers and volunteer organizations. As trustee for the Carpenters and Millworkers Joint Apprenticeship Program, he is responsible for the oversight of funds and activities of the apprenticeship program. Hird has also been on the Board of Directors of Wright Christian Academy for the last five years and holds a leadership position in his church. Hird has not been arrested or cited for any violations of the law since his release from prison. Duane Walker, Executive Vice-President of Oklahoma Fixtures; Jeff Brown, Administrator of Wright Christian Academy; Stephen Andrew, a lawyer who represents Oklahoma Fixture in labor relation matters; Richard Wright, a lawyer for whom Hird worked as a law clerk; and, by affidavit, Ronnie Line, Chairman and President of Oklahoma Fixture testified to Hird's trustworthiness, his honesty, his fairness, and the respect in which they hold him. All the witnesses testifying in his behalf think highly of Hird, even knowing of this conviction and believe that he should be readmitted to the practice of law.

¶ 11 At the time of Hird's resignation from the OBA, he did not have any clients and had not practiced law for a year. Hird did not file an affidavit within the twenty-day limit as required by rule 9.1 of the Rules Governing Disciplinary Proceedings stating that he had notified all his clients, listing the clients, and listing the courts and agencies before which he was admitted to practice. The affidavit was not filed until October 22, 1998, less than one month before Hird filed his petition for reinstatement on November 16, 1998.

## II. PRT RECOMMENDATIONS

¶ 12 The PRT recommended that Hird be readmitted to the practice of law. The PRT noted that Hird and his witnesses portrayed him at the time of the misconduct as a man who was young, made too much money too fast, and lost his sense of values. The PRT was concerned that the description of Hird's current good character and exemplary behavior were no different than the character and behavior that he exhibited before being convicted.

## III. ANALYSIS

¶ 13 This Court's review of the record is *de novo.* *State ex rel. Oklahoma Bar Ass'n v. Wilkins,* 1995 OK 59, ¶ 12, 898 P.2d 147, 150. Even though this Court is not bound by the PRT's recommendations, they are noted.

¶ 14 Under rule 11.4 of the Rules Governing Disciplinary Proceeding, an applicant seeking reinstatement must show by clear-and-convincing evidence "the applicant's conduct will conform to the high standards required of a member of the Bar." The seriousness of and the circumstances surrounding the original offense and restitution are factors in evaluating whether reinstatement is appropriate. Rule 11.4, Rules Governing Disciplinary Proceeding, Okla. Stat. tit. 5, ch. 1, app. 1-A (1991). Other factors are: (1) moral fitness at the time of the reinstatement proceedings, (2) abstinence from the practice of law since the time of disbarment or resignation, (3) consciousness of and remorse for the wrongful conduct, (4) the extent of rehabilitation, (5) conduct subsequent to discipline, (6) time period since discipline, (6) character, maturity, and experience at the time of discipline, and (7) competence and learning in legal skills. Rule 11.5, Rules Governing Disciplinary Proceeding, Okla. Stat. tit. 5, ch. 1, app. 1-A (1991); *In re Reinstatement of Kamins,* 1988 OK 32, ¶ 20, 752 P.2d 1125, 1130.

¶ 15 The applicant seeking reinstatement must present stronger proof than required for first time admission. Rule 11.4, Rules Governing Disciplinary Proceeding, Okla. Stat. tit. 5, ch. 1, app. 1-A (1991). "[T]he more severe the offense leading to resignation, the heavier the burden an applicant must overcome to be readmitted." *In re Reinstatement of Pierce,* 1996 OK 65, ¶ 18, 919 P.2d 422, 425. In considering readmission of a convicted felon, "the evidence must support a finding that the Applicant would not commit any serious crime if readmitted. Foremost consideration must be given to protecting the public welfare." *In re Reinstatement of Cantrell,* 1989 OK 165, ¶ 2, 785 P.2d 312, 313. Further reinstatement must not adversely effect the Bar. *Id.*

■ ¶ 16 The OBA opposes Hird's reinstatement based on the seriousness of the offense, the inadequate amount of time that has elapsed, and disrepute brought to the legal profession. Hird's misconduct involved the misappropriation of money. The losses resulting from the scheme were in the tens of millions of dollars. At the time of the bank fraud and money laundering scheme, Hird held a position of trust. Not only was he an officer of Caprock, he was also general counsel. As general counsel, he was obligated to advise the other Caprock officers about the legality of the scheme. Hird not only failed to advise the other officers, but he participated in the schemes, abused his position, and personally benefitted. Hird violated his position of trust both as lawyer and as an officer of Caprock and brought disrepute to the profession.

¶ 17 Hird's resignation was approved in 1993. He was released from prison in 1994. The evidence indicates that he did not complete his probation until 1997. He filed his petition for reinstatement in November of 1998, only about one year after completing his probation. Given the seriousness of Hird's conduct, we agree with the OBA that insufficient time has elapsed since his conviction, his resignation, and the end of his probation.

¶ 18 Further, Hird has failed to present clear-and-convincing evidence of his current good moral character. "Good moral character," as the phrase is used for bar admission, is synonymous with a person's ethical fitness. As evidence of his current moral character, Hird presented several witnesses that testified to Hird's involvement in his community and church and his trustworthiness. These are the same characteristics that Hird possessed before his conviction. Hird has failed to show that under pressures and circumstances similar to those which led to his past misconduct, he would now act differently. Hird has presented insufficient evidence to show a change in moral character since his resignation.

¶ 19 Hird has not met his burden of showing that he should be readmitted. The seriousness of his conviction, the disrepute on the legal profession, the short period of time since the completion of his probation and since his resignation, and his failure to show a change in his moral character outweigh the evidence supporting his reinstatement. Having found that Hird has not met his burden as to these factors, we need not address the other factors to be considered for reinstatement. Hird's petition for reinstatement is denied.

## IV. COSTS

¶ 20 The OBA has filed its application to access costs. Section 11.1(c) of the Rules Governing Disciplinary Proceedings requires an applicant seeking reinstatement to pay the expenses of the investigation, the expenses of processing the application, and the cost of the original and one copy of the transcript. The OBA has applied for reimbursement of costs of $1,972.04, including the $500.00 advanced by Hird and $1,574.85 for the costs of the original and three copies of the 249–page transcript. Because the OBA has not included an itemized statement for the original and the copies of the transcript, this Court reduces the costs of two copies of the transcripts by $124.50 which amount is estimated to be $.25 a page for the two extra copies. Thus, Hird is ordered to pay the remaining costs of $1,347.54.

PETITION FOR REINSTATEMENT DENIED; ORDERED TO PAY COSTS.

¶ 21 HARGRAVE, C.J., LAVENDER, OPALA, SUMMERS, BOUDREAU, and WINCHESTER, JJ., concur.

¶ 22 KAUGER, J., concurs in result.

¶ 23 WATT, V.C.J., dissents.

WATT, V.C.J., dissents.

¶ 1 I would follow the recommendation of the Professional Responsibility Tribunal and reinstate this petitioner.