2007 OK 84

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**William Joseph ANTON, Respondent.**

**SCBD No. 5276, OBAD No. 1705.**

Supreme Court of Oklahoma.

Nov. 6, 2007.

¶ 0 **ORDER APPROVING RESIGNA-TION PENDING DISCIPLINARY PRO-CEEDINGS.**

¶ 1 Complainant, Oklahoma Bar Association (Bar Association), has applied pursuant to Rule 8.2 of the Rules Governing Disciplinary Proceedings (5 O.S.2001 Ch. 1, App. 1–A) for an order approving the resignation of the respondent, William Joseph Anton, pending disciplinary proceedings. The application and resignation reveal the following:

¶ 2 On October 24, 2007, the respondent filed with this Court his affidavit of resignation from membership in the Bar Association pending disciplinary proceedings.

¶ 3 The respondent's affidavit of resignation reflects that: a) it was freely and voluntarily rendered; b) he was not subject to coercion or duress; and c) he was fully aware of the consequences of submitting the resignation.

¶ 4 The affidavit of resignation states respondent's awareness of the Complaint, Amended Complaint, and Application for Order of Emergency Suspension pending against him in this proceeding.

¶ 5 The Complaint in S.C.B.D. No. 5276 alleges that:

Count One: Respondent represented Vearl Carmichael. American Home Assurance Company issued a check in the amount of $85,000.00 on September 1, 2004, which included Carmichael's name as a payee. Carmichael did not endorse the check. The check shows an endorsement by respondent and Carmichael. Respondent's bank records show that on September 8, 2004, the 85,000.00 check was divided into three amounts, $73,000.00, $9,500.00, and $2,500.00, and deposited into three of Respondent's bank accounts. According to respondent's records the "Total to Client" after expenses and attorney's fees is $67,181.30. In 2005 respondent informed Carmichael that no check had been issued, but he would loan Carmichael funds until the check arrived. Respondent loaned Carmichael $1,500.00 (June 18, 2005), $1,500.00 (August 8, 2005), $1,400.00 (September 15, 2005), $2,000.00 (November 4, 2005), and $1,000.00 (December 4, 2005). Respondent's statements of attorney trust accounts show that the payments to Carmichael could not have been paid with Carmichael's insurance proceeds as these funds were misappropriated by November 1, 2004, or earlier. Respondent stated that he sent a $67,181.30 check to the Center for Medicare and Medicaid Services on Carmichael's behalf, however, that check did not clear his trust account. The Social Security Administration notified Carmichael that it had no record of the $67,181.30 allegedly paid to it by respondent. Carmichael filed a grievance with the Oklahoma Bar Association. Carmichael retained a different attorney who made multiple requests to respondent for an account of the funds. Respondent did not respond to these requests. Carmichael filed an action in the District Court for Tulsa County against respondent. The Bar Association requested that respondent provide a copy of the alleged $67,181.30 check. He responded that Carmichael's new lawyer requested a copy of the check via a discovery request, and that he would provide a copy

of the check to the Bar Association at a future date. Respondent sought a protective order in the District Court case to prevent discovery. A review of respondent's attorney trust account shows that operating or personal expenses were paid directly from the trust account.

The Bar Association alleges that respondent's conduct violated Rules 1.1, 1.3, 1.4, 1.15, 8.1(b) and 8.4(c) of the Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A, as amended, and that it also violated Rules 1.3 and 1.4 of the Rules Governing Disciplinary proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

¶ 6 The Amended Complaint in S.C.B.D. No. 5276 alleges that:

Count Two: An order awarded permanent and partial disability benefits and disfigurement to Phillip Andrews, respondent's client. Payments were to be made to Andrews by a lump sum of $20,134.00 and the balance at the rate of $237.00 per week until the total award of $30,324 (less attorney's fees) was paid to Andrews. In June 2004, a check was issued for $20,134.00 to payees Phillip Andrews and respondent. The check shows an endorsement by Andrews, however, he states that he did not endorse the check. Andrews states that he did not receive any proceeds from the check for $20,134.00. In October 2004, a check was issued in the amount of $5,045.00 with respondent and Andrews as payees. The check shows an endorsement by Andrews, however, he states that he did not endorse the check. Andrews states that he did not receive proceeds from this check. The check for $5,045.00 was not deposited into respondent's client trust account.

On January 30, 2007, Phillip Andrews filed a grievance with the Oklahoma Bar Association. On February 13, 2007, the Bar Association requested a response from respondent. He failed to respond. On March 7, 2007, the Bar Association sent another letter requesting a response. Respondent responded by facsimile letter and stated that he would provide a narrative response to the new grievance at a later date. After not receiving a timely response to the grievance, on March 19, 2007, the Oklahoma Bar Association again requested a response. No response was made to this letter. On April 5, 2007, the Bar Association sent another letter to respondent requesting a response to the grievance, and on May 7, 2007, the Bar received a copy of a handwritten letter purportedly from respondent and forwarded from his counsel. On May 8, 2007, the Bar Association sent a letter to respondent's counsel sating that the response was not a full and fair response to the allegations and requested additional information. No additional information was provided in response to this letter. Respondent was then served with a subpoena duces tecum to appear at the Bar Center and provide records relating to the grievance. Respondent failed to appear.

On or about April 30, 2007, Andrews received correspondence from respondent which included an undated settlement sheet and a check in the amount of $25,187.50, and dated December 20, 2006. The settlement sheet shows a settlement of $32,625.00 less attorney fees of $6,665.00 less costs of $772.50 and total to the client in the amount of $25,187.50. Respondent's bank records show that the check for $20,134.00 was deposited on June 23, 2004, and that within one month the daily balance for this account was $20.43. The bank records show that the $25,187.50 paid to Andrews could not have been paid with the Andrews proceeds since they were misappropriated by July 14, 2004, or earlier. The $25,187.50 check to Andrews was drawn on a trust account that was established January 12, 2005, six months after respondent received Andrews' funds. The source of the $25,187.50 check to Andrews was from respondent commingling his funds with those of Andrews or from other clients' funds. A review of respondent's trust account records shows that operating and personal expense were paid from funds to be held in trust, and that multiple payments were made to respondent's family members from funds to be held in trust for clients. Respondent failed to communicate the status of Andrews' funds to him.

The Bar Association alleges that respondent's conduct violated the Rules 1.1, 1.3, 1.4, 1.15, 8.1(b) and 8.4(c) of the Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A, as amended, and that it also violated Rules 1.3, 1.4, 5.2 of the Rules Governing Disciplinary Proceedings, 5 O.S. 2001, Ch. 1, App. 1–A.

Count 3: On January 31, 2007, a check was issued in the amount of $20,000.00 with respondent, and his client, Sandra Graham, as the payees. The check reflects an endorsement by Graham, but she stated that she did not endorse the check. She stated that she did not receive any proceeds from the $20,000.00 check. She stated that when she went to court to sign the settlement for $20,000.00, less $4,000.00 for attorney's fees, respondent informed here she would receive the funds in two or three months, when in fact, respondent had already received and deposited the check. Respondent's trust account bank records show that $20,000.00 was deposited on February 2, 2007, and that none of these funds were paid to Graham as of the date the amended complaint was filed on September 28, 2007. The bank records of respondent's trust account show that the $20,000.00 was not held in trust for Graham and that the balance on the account was $132.56 within four weeks of the date the check was deposited.

On July 26, 2007, Sandra Graham filed a grievance with the Bar Association. General Counsel for the Bar Association requested respondent to respond to the grievance. He had failed to file a written response within twenty days. On August 31, 2007, a second letter was sent by certified mail requesting a response within five days. On September 10, 2007, General Counsel received a letter from respondent's attorney and attached thereto was an "undated, handwritten, one page, virtually unreadable letter on the letterhead of William J. Anton" which failed to provide a full and fair response to the grievance. On September 20, 2007, respondent was served with a subpoena duces tecum to appear at the Bar Center and bring records relating to the grievance. Respondent failed to appear.

The Bar Association alleges that respondent's conduct violated Rules 1.1, 1.3, 1.4, 1.15, and 8.4(c) of the Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A, as amended, and also Rules 1.3, 1.4, and 5.2 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

¶ 7 The resignation states that the respondent is aware that the allegations against him, if proven, would constitute violations of Rules 1.3, 1.4, and 5.2 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A, and Rules 1.1, 1.3, 1.4, 1.15, 8.4(b), and 8.4(c) of the Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A, and his oath as an attorney. The respondent acknowledges that he has not filed a response to the Amended Complaint filed in this Court as required by Rule 6.4 of the Rules Governing Disciplinary Proceedings, and acknowledges that he has not filed a response to the Court's Order to show cause why an order of interim suspension should not be entered suspending respondent's license to practice law. Respondent states that he is aware that the burden of proof rests upon the Bar Association, and that he waives his right to contest the allegations made against him.

¶ 8 The resignation states that the respondent is aware of the requirements of Rule 9.1 of the Rules Governing Disciplinary Proceedings and will comply with that Rule.

¶ 9 The respondent states that he is aware that he may make no application for reinstatement prior to the expiration of five years from the effective date of the order approving his resignation, and that reinstatement requires compliance with Rule 11 of the Rules Governing Disciplinary Proceedings. *See* 5 O.S.2001 Ch. 1, App. 1–A, Rule 8.2, Rules Governing Disciplinary Proceedings; *State ex rel. Oklahoma Bar Association v. Bourland*, 2001 OK 12, 19 P.3d 289; *In re Reinstatement of Hird*, 2001 OK 28, 21 P.3d 1043.

¶ 10 The respondent acknowledges that he must surrender his Oklahoma Bar Association membership card to the Office of the General Counsel contemporaneously with his

resignation. By a subsequent affidavit, respondent states that he cannot locate his membership card.

¶ 11 The respondent acknowledges that he must cooperate with the Office of the General Counsel by providing current contact information and identifying active cases wherein client documents and files should be returned to the client or forwarded to new counsel, and that he must cooperate in providing fees or funds owed by the respondent to his clients and determining the amount of those fees and funds.

¶ 12 The respondent states that he is aware that the Clients' Security Fund may receive claims from his former clients, and that he shall pay to the Oklahoma Bar Association, prior to reinstatement, those funds, including principal and interest, expended by the Clients' Security Fund for claims against him. *See* 5 O.S.2001 Ch. 1, App. 1–A, Rule 11.1(b), Rules Governing Disciplinary Proceedings; *State ex rel. Oklahoma Bar Association v. Heinen*, 2003 OK 36, ¶ 9, 84 P.3d 708, 709.

¶ 13 The application for approval of respondent's resignation filed by the Bar Association states that it has incurred costs in the investigation of respondent in the amount of $541.41. Respondent's resignation acknowledges these costs, and he states that he will reimburse the Oklahoma Bar Association. When professional discipline is imposed costs may be awarded against a respondent. 5 O.S.2001 Ch. 1, App. 1–A, Rule 6.16, Rules Governing Disciplinary Proceedings. We have ordered respondents to pay costs when we have approved resignations pending disciplinary proceedings. *See, e.g., State ex rel. Oklahoma Bar Association v. Faulk*, 2001 OK 86, ¶ 6, 37 P.3d 809, 811. The application by the Bar Association for assessment of costs in the amount of $541.41 is granted. *State ex rel. Oklahoma Bar Association v. O'Neal*, 2007 OK 13, ¶ 13, 154 P.3d 1270, 1273–1274.

¶ 14 The Bar Association filed an application for an interim suspension of respondent's license to practice law. The Court notes that respondent has not responded to this Court's order to show why his interim suspension from the practice of law should not be ordered by this Court. The Order was filed October 15, 2007, and required respondent to respond within ten days. Rule 6.2A of the Rules Governing Disciplinary Proceedings. The Bar Association then sought approval of respondent's resignation on October 24, 2007. We have declined to make a date of resignation an earlier date of interim suspension. *See In re Reinstatement of Johnston*, 2007 OK 46, ¶ 14, 162 P.3d 922, 925, citing *State of Oklahoma, ex rel. Oklahoma Bar Association v. Johnston*, 2000 OK 80, 14 P.3d 544. Approval of a lawyer's resignation from the Bar Association is within the judicial discretion of this Court. *State ex rel. Oklahoma Bar Association v. Gasaway*, 1993 OK 133, 863 P.2d 1189, 1194. A resignation pending disciplinary proceedings is tantamount to a disbarment. *State ex rel. Oklahoma Bar Association v. Miller*, 2006 OK 55, ¶ 3, 142 P.3d 425, 426; *State ex rel. Oklahoma Bar Association v. Erbar*, 1995 OK 1, 895 P.2d 291. Consequently, we conclude that no effective relief may be afforded to either party on the application for an interim suspension under these circumstances, and that the Bar Association's request for interim suspension is moot by our acceptance of respondent's resignation.

¶ 15 The official roster name and address of the respondent is William Joseph Anton, O.B.A. No. 10192, 4528 S. Sheridan Rd., Ste. 103, Tulsa, OK 74145.

¶ 16 IT IS THEREFORE ORDERED that the application by the Bar Association for an order approving William Joseph Anton's resignation be approved.

¶ 17 IT IS FURTHER ORDERED that respondent's name be stricken from the Roll of Attorneys and that he make no application for reinstatement to membership in the Oklahoma Bar Association prior to five years from the effective date of this order.

¶ 18 IT IS FURTHER ORDERED that respondent shall pay costs in the amount of $541.41 to the Oklahoma Bar Association within ninety (90) days of the effective date of this order.

¶ 19 IT IS FURTHER ORDERED that if any funds of the Clients' Security Fund of

the Oklahoma Bar Association are expended on behalf of respondent, he must show the amount paid and that the same has been repaid, with interest, to the Oklahoma Bar Association to reimburse such Fund prior to reinstatement.

¶20 DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 5th DAY OF NOVEMBER, 2007.

/s/ James Winchester
    Chief Justice

¶21 WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, TAYLOR and COLBERT, JJ., concur.