2009 OK 88

**STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**Jacob Thayne WILLIAMS, Respondent.**

**SCBD No. 5394.**

Supreme Court of Oklahoma.

Nov. 30, 2009.

## ORDER APPROVING RESIGNATION FROM OKLAHOMA BAR ASSOCIATION PENDING DISCIPLINARY PROCEEDINGS; COSTS IMPOSED

¶1 The Oklahoma Bar Association (Complainant) filed its Application for Order Approving Resignation on May 2, 2008, asking this Court to enter an order approving the resignation of Jacob Thayne Williams (Respondent), pending disciplinary proceedings, pursuant to Rules 8.1 and 8.2, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2001, Ch. 1, App. 1–A. Complainant alleges Respondent's voluntary affidavit of resignation was executed in conformity with the requirements of Rule 8.1, RGDP.

¶2 **UPON CONSIDERATION OF THE MATTER THIS COURT FINDS:**

1. On May 2, 2008, Respondent submitted his affidavit of resignation from membership in the Oklahoma Bar Association pending disciplinary proceedings.[1] This cause was assigned to this Court on October 15, 2009.

2. Respondent's affidavit reflects that (a) it was freely and voluntarily tendered; (b) he was not subject to coercion or duress; (c) he was aware of the consequences of submitting this resignation; and (d) he is aware his resignation is subject to the approval of this Court, but that he intends that it be effective from the date of the application, May 2, 2008, and will conduct his affairs accordingly.

3. Respondent states the following in his affidavit of resignation: "I am aware that there is a Formal Complaint against me pending before the Supreme Court of the State of Oklahoma, *State of Oklahoma, ex rel., Oklahoma Bar Association v. Jacob Thayne Williams,* OBAD #1744, SCBD #5394. I acknowledge that this Complaint was filed on March 5, 2008, and that I was personally served with a copy of the Complaint. I acknowledge that I did not file an Answer to the Complaint. I acknowledge that I was personally served with the First Amended Complaint filed on March 25, 2008 and I did not file an Answer. I acknowledge the First Amended Complaint alleges violations of Rules 1.3, 1.4 and 5.2, RGDP, and violations of the, (sic) Rules 1.1, 1.2, 1.3, 1.4, 1.15, 8.1, and 8.4(a) and (c), Oklahoma Rules of Professional Conduct ("OPRC"), 5 O.S.2001, Ch. 1, App. 3–A. . . ."

4. The First Amended Complaint notes under the heading regarding enhancement that the Professional Responsibility Commission issued a private reprimand to Williams on May 27, 2005, in which the PRC found his conduct violated Rules 5.5(a) and 8.4(c), Oklahoma Rules of Professional Conduct. Respondent's misconduct involved his representation of Dustin Palmer in a lawsuit filed by DIRECTV in the United States District Court for the Northern District of Oklahoma. Respondent was not admitted to practice in that district. He filed an Entry of Appearance, a request for an extension of time to answer or plead, and later an answer to the complaint, signing the name of Oklahoma lawyer Kamran Momeni without Mr. Momeni's knowledge or consent. Mr. Momeni denied he had ever given his consent. Respondent acknowledged his wrongdoing and the PRC issued a private reprimand.

5. The seven counts of professional misconduct alleged in the First Amended Complaint in the instant matter are summarized in pertinent part as follows:

a. **Count I: Wells.** Respondent represented Karen Wells after her application for Social Security Disability Benefits with

---

1. The entire record was transmitted to the Court on May 8, 2008, and was assigned to a justice on October 15, 2009, for this Court's *de novo* review and disposition.

the Social Security Administration (SSA) was denied in September, 2004. Wells completed the forms and returned them to Respondent on January 21, 2005. He led her to believe he had filed the reconsideration forms on her behalf, although he never did. When confronted with information that the SSA office had not received the forms, Respondent told her the SSA was behind on processing claims and she did not need to contact it on her own, as he was handling the matter. Wells' attempts to contact Respondent were unsuccessful and she terminated his employment in July, 2006. She hired new counsel who had to start the process from the beginning because Respondent did not return her file. In August, 2006, the SSA informed her that her payments could only be paid for the previous one year, causing her to lose eight months' benefits for a total of $7344.00 ($918 per month × 8 months). The Complainant received Wells' grievance through the Tulsa County Bar Association (TCBA) and mailed notices and requests to him. However, he failed to respond to either the TCBA or to Complainant. A process server, hired to serve him with a subpoena duces tecum for a deposition on March 28, 2007, found his office had been abandoned and that his location was unknown. Complainant alleged the violation of Rules 1.1, 1.2, 1.3, 1.4, 8.1 and 8.4(a) and (c), ORPC, and Rules 1.3 and 5.2, RGDP.

**b. Count II: Davenport.** Respondent was hired to represent Judy Davenport in a personal injury case in May, 2003. In May, 2005, Respondent filed a lawsuit against three defendants, but because of lack of service, the petition was dismissed without prejudice in September, 2005. Respondent filed a second lawsuit against one defendant. Again, because of his failure to obtain service, the petition was dismissed without prejudice. He failed to advise her of the dismissals and instead, assured her he was taking care of her case. Respondent quit communicating with Davenport despite her repeated attempts to contact him. Davenport learned through her own research that her case was dismissed because of lack of service. The statute of limitations ran on Davenport's personal injury claim. She filed a grievance with Complainant on March 8, 2007, alleging Respondent's neglect and the running of the statute of limitations. Respondent failed to respond to Complainant's two attempts to notify him of the grievance. Complainant alleged violations of Rules 1.1, 1.2, 1.3, 1.4, 8.1 and 8.4(a) and (c), ORPC, and Rules 1.3 and 5.2, RGDP.

**c. Count III: Vick.** Teresa Vick and her husband hired Respondent to file for Social Security Disability benefits in November, 2006. Afer completing the forms and signing a written agreement, they had no further contact with Respondent, despite repeated attempts to contact him. The Vicks attempted to terminate him and obtain their file in order to hire another attorney. Their attempts were unsuccessful, and they filed a grievance with Complainant on March 8, 2007. Respondent failed to respond to Complainant's notice by certified letter. Complainant alleged violations of Rules 1.1, 1.3, 1.4, 1.15, 8.1 and 8.4(a) and (c), ORPC, and Rules 1.3 and 5.2, RGDP.

**d. Count IV: Wallin.** Respondent was hired on October 27, 2005, by Wade Wallin whose wife and son had been involved in an auto accident. The statute of limitations was set to expire on October 28, 2005, and Respondent filed a lawsuit on October 27, 2005. Thereafter, Respondent failed to obtain service on the defendant, resulting in a dismissal without prejudice. Respondent assured Wallin he could refile within one year and he would negotiate with the insurance company for a settlement. Respondent did not refile the petition and waited until January 15, 2007, to issue a demand to the insurance company. The statute of limitations barred Wallin's claim and he filed a grievance with Complainant which unsuccessfully tried to locate and serve Respondent. Complainant alleged violations of Rules 1.1, 1.2, 1.3, 1.4, 8.1 and 8.4(a) and (c), ORPC, and Rules 1.3 and 5.2, RGDP.

**e. Count V: Gragg.** Alisha Gragg hired Respondent to represent her following an auto accident in November, 2004. Respondent negotiated a settlement for uninsured

motorist benefits in the amount of $50,000.00. Gragg never received a final accounting of the settlement disbursement. Complainant issued a subpoena for Respondent's trust account. The records indicate that $10,021.80 of the settlement remains unpaid. Respondent did file a petition on Gragg's behalf prior to the time the claim would be barred by the statute of limitations. However, it was dismissed without prejudice pursuant to District Court Rule 9(a). Respondent did not return her file and Gragg had to retain other counsel. Gragg filed a grievance with Complainant, but the letter was returned "moved, left no forwarding address, unable to forward, return to sender." Complainant alleges violations of Rules 1.1, 1.2, 1.3, 1.4, 1.15, 8.1 and 8.4(a), (c) and (d), ORPC, and Rules 1.3, 1.4 and 5.2, RGDP.

**f. Count VI: Russell.** Brenda Russell hired Respondent in a personal injury matter which he settled. He disbursed a partial payment to her, but $1,373.96 is still owed, according to Russell's records. Russell filed a grievance on September 13, 2007 with Complainant, but despite letters and phone calls to Respondent's roster address, he has not responded. Complainant alleges violations of Rules 1.3, 1.15, 8.1 and 8.4(a) and (c), ORPC, and Rules 1.3, 1.4 and 5.2, RGDP.

**g. Count VII: Brennan.** Cynthia Brennan hired Respondent to represent her in a personal injury case after she was injured in an auto accident. They entered into a contingency fee agreement, with a clause reducing Respondent's fee by 20% on amounts received before filing a lawsuit. The matter was settled by Respondent for $75,000.00. Four checks were issued by the insurance company to Respondent, Ms. Brennan and several medical providers. Brennan attempted to learn the whereabouts of the checks, but Respondent did not respond. She learned the medical providers were not paid. Brennan met with Respondent and learned he had endorsed her name to the checks and used the money for his personal benefit without her authorization. She terminated her contract with him and filed a grievance with Complainant. Neither she nor any of the medical providers received any money

from the settlement. Despite being notified of the grievance, Respondent failed to respond to Complainant, which alleges violations of Rules 1.15, 8.1 and 8.4(a) and (c), ORPC, and Rules 1.3, 1.4 and 5.2, RGDP.

6. In addition to the complaints filed against him, Respondent acknowledges in his affidavit that the following grievance has also been lodged in the Office of the General Counsel and that an investigation is proceeding:

**DC–08–27: Michael Worth.** This grievance, received by the Office of the General Counsel on February 14, 2008, alleges his failure to disburse settlement proceeds in a personal injury suit and his negotiation of the settlement checks by forging the Worths' signature without their authorization. Respondent is aware that, if proven, the allegations set forth would constitute violations of Rules 1.1, 1.2, 1.3, 1.4, 1.15, 8.1 and 8.4(a) and (c), ORPC, and Rules 1.3, 1.4 and 5.2, RGDP.

7. Respondent is aware that the burden of proof regarding the allegations set forth rests upon Complainant. However, he waives any and all rights to contest the allegations.

8. Respondent acknowledges that the approval or disapproval of his resignation is within the discretion of the Supreme Court of Oklahoma.

9. Respondent agrees to comply with Rule 9.1, RGDP, within twenty (20) days of the date of this resignation.

10. Respondent acknowledges and agrees to cooperate with the Office of the General Counsel to provide his current contact information. He also agrees to identify any active cases wherein client documents and files need to be returned to the client or forwarded to new counsel, and any fees or funds which are owed by him to clients and the amount owed.

11. Respondent acknowledges he may be reinstated to the practice of law only upon full compliance with the conditions and procedures prescribed by Rule 11, RGDP, and that he may make no application for reinstatement prior to the expiration of five (5) years from the effective date of this Order.

12. Respondent acknowledges that as a result of his conduct, the Client Security

**1198**

Fund (the Fund) may receive claims from his former clients; that Complainant may contact him for a response to such claims; and that the Fund's Committee may recommend payment be made to the claimants from the Fund. Respondent agrees that if Complainant approves such claims, he will reimburse the Fund the principal amounts and the applicable statutory interest prior to filing his application for reinstatement.

13. Respondent acknowledges he must surrender his Oklahoma Bar Association (OBA) membership card and will do so if he locates it. However, Complainant acknowledges the receipt of Respondent's OBA membership card.

14. Respondent acknowledges costs remain payable in the amount of $190.95 for the investigation and prosecution of this matter. He states he will remit those costs prior to filing his application for reinstatement of his license to practice law. Complainant has not filed an application for costs in this matter. However, pursuant to Rule 6.16, RGDP, where discipline results, such costs shall be paid within ninety (90) days after this Court's order becomes effective.

15. Respondent's resignation should be approved.

¶ 3 **IT IS THEREFORE ORDERED THAT** Complainant's Application is approved. Respondent's resignation pending disciplinary proceedings is accepted and approved effective May 2, 2008, and Respondent's right to practice law is relinquished.

¶ 4 **IT IS FURTHER ORDERED THAT** the name of Jacob Thayne Williams be stricken from the Roll of Attorneys, and that he may make no application for reinstatement to membership in the Oklahoma Bar Association prior to the lapse of five years from the effective date of this Order. Repayment to the Client Security Fund for any monies expended because of Respondent's malfeasance or nonfeasance shall be one of the conditions of reinstatement.

¶ 5 **IT IS FURTHER ORDERED THAT** Respondent shall comply with Rule 9.1, RGDP, within twenty (20) days of the date this order is filed.

¶ 6 **IT IS FURTHER ORDERED THAT** Respondent shall remit $190.95 to Complainant within ninety (90) days of the date this order is filed, in compliance with Rule 6.16, RGDP.

/s/ James E. Edmondson
CHIEF JUSTICE

ALL JUSTICES CONCUR.