OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CLABORN

 

 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CLABORN
2019 OK 14
Case Number: SCBD-6746
Decided: 03/25/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 14, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
CHARLOTTE LINN CLABORN, Respondent.

Â¶0 ORDER APPROVING RESIGNATION PENDING DISCIPLINARY PROCEEDINGS

Â¶1 Complainant, Oklahoma Bar Association (Bar Association), has applied pursuant to Rule 8.2 of the Rules Governing Disciplinary Proceedings (5 O.S.2011 Ch. 1, App. 1-A) for an order approving the resignation of the respondent, Charlotte Linn Claborn, pending disciplinary proceedings.

Â¶2 On March 8, 2019, Claborn filed with this Court her affidavit of resignation from membership in the Bar Association pending disciplinary proceedings. The affidavit was executed March 6, 2019.

Â¶3 Claborn's affidavit of resignation reflects that: (a) it was freely and voluntarily rendered; (b) she was not subject to coercion or duress; and (c) she was fully aware of the consequences of submitting the resignation.

Â¶4 The affidavit of resignation states Claborn's awareness of a grievance received by the Bar Association concerning her conduct and alleging she engaged in conflicting representation of clients. The Bar's Complaint based on this grievance alleges: (1) Claborn represented Daniel Geiser in a divorce case against April Geiser; (2) Claborn visited April Geiser in 2013 while April was incarcerated in order to obtain a waiver of her appearance in the divorce; (3) The documents April Geiser signed "gave up custody of her older child", stated Daniel Geiser was not the father of April Geiser's unborn child, April (hereafter Geiser) was not awarded visitation, and she was required to pay child support; (4) Claborn contacted Geiser in April 2014 to discuss Geiser's intentions concerning her unborn child and Claborn's representation of Geiser in a Judicial Review of her criminal case; (5) Claborn started discussions with Geiser about placing her child with Claborn's daughter until Geiser was no longer incarcerated; (6) Claborn delivered a letter to Geiser from Claborn's daughter stating Claborn's daughter would take care of Geiser's child; Geiser gave birth to a boy and she agreed to a temporary guardianship with Claborn's daughter and son-in-law; (7) The infant was released from the hospital to Claborn's daughter and son-in-law who started calling the child by a name other than the one selected by Geiser; (8) Claborn filed a petition for guardianship on behalf of her daughter and son-in-law; (9) The guardianship was granted and included language allowing for the adoption of the child; (10) Claborn informed Geiser by letter that Claborn's daughter and son-in-law were planning to adopt the child, and had decided to give the child a different first name because "they do not believe the child should be named after the biological father;" (11) Claborn then filed an Application for Judicial Review concerning Geiser's criminal case and the application was denied; (12) Claborn's daughter and son-in-law, as guardians, filed a petition for adoption without consent; (13) Claborn was not the lawyer for the guardians on their petition for adoption; (14) Geiser filed a petition to modify the guardianship stating she was deceived by Claborn, and Claborn had "only sent part of the guardianship papers to her to get her to sign;" (15) Geiser stated she was unaware the guardianship was not a temporary guardianship or that it included a possible adoption; (16) Geiser was released from incarceration; (17) The assigned trial judge denied the petition for adoption and characterized Claborn's actions as "the most dishonest, deceitful and unethical behavior" the judge had seen in several years; and (18) Geiser was reunited with her child.

Â¶5 The Complaint against Claborn states she represented Geiser in a criminal case while representing Claborn's daughter in the guardianship case involving Geiser's son, and Claborn created a conflict of interest in violation of Rule 1.7 of the Oklahoma Rules of Professional Conduct, 5 O.S.2011, Ch.1, App. 3-A, (ORPC).[1] The Complaint states Claborn had conversations with Geiser when she lacked an attorney, and these conversations were false and misleading regarding Claborn's interests. The Bar asserts Claborn's conduct violated Rules 4.1 and 4.3 of the Oklahoma Rules of Professional Conduct, 5 O.S.2011, Ch.1, App. 3-A.[2] The Complaint alleges Claborn's conduct was prejudicial to the administration of justice and in violation of the Oklahoma Rules of Professional Conduct, 5 O.S.2011, Ch.1, App. 3-A, Rule 8.4(a), (c), and (d),[3] and Rule 1.3 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2011, Ch. 1, App. 1-A.[4]

Â¶6 Respondent's resignation states she is aware the allegations against her, if proven, would constitute violations of Rules 1.3 of the Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1-A, and Rules 1.7, 4.1, 4.3, and 8.4 (a), (c), and (d) of the Oklahoma Rules of Professional Conduct, 5 O.S.2011, Ch.1, App. 3-A, as well as her oath as an attorney.

Â¶7 Respondent states she is aware the burden of proof regarding the allegations against her rests upon the Oklahoma Bar Association, and she waives any and all rights to contest the allegations. The record before us shows a motion by the Bar Association before the trial panel to have the allegations in the Complaint be deemed admitted, and an order of a presiding master of the Professional Responsibility Tribunal which grants the motion deeming the Complaint's allegations admitted.[5] We need not examine the allegations deemed admitted for the purpose of imposing the proper professional discipline in this proceeding. A proper resignation pending disciplinary proceedings will necessarily result in the Court imposing a rule-mandated degree of discipline tantamount to disbarment.[6] Further, the particularized list of all allegations of misconduct against her stated in her affidavit satisfy the requirements of Rule 8.1(b) of the Rules Governing Disciplinary Proceedings.[7]

Â¶8 Respondent states her awareness of the requirements of Rule 9.1, of the Rules Governing Disciplinary Proceedings, and she states she shall comply with that Rule "within twenty (20) days following the date of her resignation."[8]

Â¶9 Her resignation states she surrendered her Oklahoma Bar membership card to the Bar Association "with this resignation." The affidavit from the Bar Association states Claborn surrendered her Bar Association membership card to the Bar on March 6, 2019. Respondent's resignation was executed March 6, 2019. Her statement of compliance with Rule 9.1 shows she is using the "date of the resignation" for performing professional obligations. The Bar Association filed its application for approval of the resignation in this Court on March 8, 2019.

Â¶10 If the Court approves a resignation pending discipline, then the Court may determine an effective date for the resignation to be the date it was submitted to the Bar Association when the resignation is contemporaneously filed with this Court and the attorney is treating the date of submission as an effective date for all of the attorney's professional obligations.[9] The two days between March 6th and March 8th is sufficiently contemporaneous for dating the resignation from the date of its submission to the Bar Association in the circumstance of respondent treating the resignation as effective on March 6, 2019. We determine the effective date of resignation to be March 6, 2019.

Â¶11 Respondent states her awareness of Rule 8.2, Rules Governing Disciplinary Proceedings, and that approval or disapproval of her resignation is within the discretion of the Supreme Court.[10]

Â¶12 Respondent states she is aware she may make no application for reinstatement prior to the expiration of five years from the effective date of the order approving her resignation. We construe this language to mean she is aware she may make no application for reinstatement prior to the expiration of five years from the effective date of the order approving her resignation or the effective date of her resignation as determined by the Court.[11] Respondent states she is aware that reinstatement requires compliance with Rule 11 of the Rules Governing Disciplinary Proceedings.[12]

Â¶13 Respondent states she is aware the Client's Security Fund may receive claims from her former clients, and she shall pay to the Oklahoma Bar Association, prior to reinstatement, those funds, including principal and interest, expended by the Client's Security Fund for claims against her.[13]

Â¶14 Respondent acknowledges she must cooperate with the Office of the General Counsel by providing current contact information and identifying active cases wherein client documents and files should be returned to the client or forwarded to new counsel, and cases where fees or refunds are owed by Claborn.

Â¶15 The application for approval of Claborn's resignation filed by the Bar Association states costs were incurred in the investigation, and the Bar Association seeks reimbursement of costs. Respondent's resignation states she has been informed by the Bar Association that costs in the investigation were incurred and the Bar Association is seeking reimbursement. If professional discipline occurs in the form of the Court approving a resignation pending discipline, then costs may be awarded and a respondent shall pay those costs within ninety (90) days unless the Court has determined otherwise upon good cause shown.[14]

Â¶16 The Application lists individual items of cost for which the Bar Association seeks reimbursement, and the Application states a sum of these costs. The expressly specified total amount of costs pled in the Application is $1,148.19. However, this total appears to be approximately 79% of the total amount of the individual items of costs listed in the Application. When the individual items of cost are added together the sum is $1,448.19. The individual items of costs listed in the Application are supported by exhibits attached to the Application. The individual items of costs include three transcript expenses totaling $978.10, and an additional $470.09 for postage, travel mileage for the Bar's investigator and Trial Panel members, and a witness fee with travel mileage.

Â¶17 The Court's exercise of exclusive original jurisdiction in a Bar disciplinary proceeding includes a full-scale exploration of all relevant facts.[15] Due process requires the Bar to allege facts sufficient to put an attorney on notice of the claims asserted against the attorney.[16] Respondent had notice the Bar's Application sought costs in the amount of $1,448.19. We award costs in the amount of $1,448.19, and they shall be paid within 90 days of the effective date of this Order.

Â¶18 The official roster name and address of the respondent is Charlotte Linn Claborn, O.B.A. No. 21139, P. O. Box 13, Stonewall, OK 74871-0013.

Â¶19 IT IS THEREFORE ORDERED that the application by the Bar Association for an order approving Charlotte Linn Claborn's resignation be approved, and the resignation is deemed effective on the date it was executed and submitted to the Oklahoma Bar Association, March 6, 2019.

Â¶20 IT IS FURTHER ORDERED that respondent's name be stricken from the Roll of Attorneys and that she make no application for reinstatement to membership in the Oklahoma Bar Association prior to five years from the effective date of her resignation, March 6, 2019.

Â¶21 IT IS FURTHER ORDERED that respondent shall pay costs in the amount of $1,448.19 to the Oklahoma Bar Association within ninety (90) days from the effective date of this order.

Â¶22 IT IS FURTHER ORDERED that if any funds of the Clients' Security Fund of the Oklahoma Bar Association are expended on behalf of respondent, she must show the amount paid and that the same has been repaid, with interest, to the Oklahoma Bar Association to reimburse such Fund prior to reinstatement.

Â¶23 DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 25th DAY OF MARCH, 2019.

/S/CHIEF JUSTICE

Â¶24 ALL JUSTICES CONCUR.

FOOTNOTES

[1] 5 O.S.2011, Ch.1, App. 3-A, ORPC, Rule 1.7:
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

[2] 5 O.S.2011, Ch.1, App. 3-A, ORPC, Rule 4.1:
In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; or (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

5 O.S.2011, Ch.1, App. 3-A, ORPC, Rule 4.3:
In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

[3] 5 O.S.2011, Ch.1, App. 3-A, ORPC, Rule 8.4(a), (c), and (d):
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; ...
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice; ....

[4] 5 O.S.2011, Ch. 1, App. 1-A, RGDP, Rule 1.3:
The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all.

[5] If allegations against an attorney are deemed admitted in the context of a trial panel proceeding, then this Court exercises exclusive and original jurisdiction using de novo review to impose and determine discipline based upon clear and convincing evidence of professional misconduct. State ex rel. Oklahoma Bar Ass'n v. Knight, 2015 OK 59, 359 P.3d 1122, 1128-1129; State ex rel. Oklahoma Bar Ass'n v. Seratt, 2003 OK 22, Â¶ 8, 66 P.3d 390, 392.

[6] State ex rel. Oklahoma Bar Ass'n v. Caporal, 2014 OK 104, Â¶ 6, 350 P.3d 106, 107 (a resignation pending discipline is tantamount to disbarment); 5 O.S.2011 Ch. 1, App. 1-A, RGDP, Rule 11.1 (e) (attorney may not make an application for reinstatement prior to the expiration of five years from the effective date of disbarment). See infra note 12, stating RGDP, Rule 8.1 (c) (attorney may not make an application for reinstatement prior to the expiration of five years from the effective date of resignation).

[7] 5 O.S.2011, Ch. 1, App. 1-A, RGDP, Rule 8.1, states in part:

A lawyer who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may resign membership in the Oklahoma Bar Association, and thereby relinquish the right to practice law, only by delivering to the Commission an affidavit stating that the lawyer desires to resign and that:...

(b) The lawyer is aware that there is presently pending an investigation into, or proceedings involving, allegations that there exist grounds for discipline, specifying particularly the misconduct alleged;....

[8] 5 O.S.2011, Ch. 1, App. 1-A, RGDP, Rule 9.1:
When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or who has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel. If such lawyer is a member of, or associated with, a law firm or professional corporation, such notice shall be given to all clients of the firm or professional corporation, which have legal business then pending with respect to which the disbarred, suspended or resigned lawyer had substantial responsibility. The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement.

[9] State ex rel. Oklahoma Bar Ass'n v. Demopolos, 2015 OK 50, Â¶ 36 & n. 56, 352 P.3d 1210, 1221 (a proper resignation may be made effective on the date of submission to the Oklahoma Bar Association); State ex rel. Oklahoma Bar Ass'n v. Bourland, 2001 OK 12, Â¶Â¶ 14-17, 19 P.3d 289, 291-292 ("the usual effective date for a resignation is the date it is submitted to the Oklahoma Bar Association . . . [when] the resignation was executed, tendered to the Bar Association, and contemporaneously filed with the Court with a statement therein that the respondent was treating the resignation as effective upon the date of filing"). See also State ex rel. Oklahoma Bar Ass'n v. Perkins, 1988 OK 65, 757 P.2d 825, 827 ("effective date of a resignation is upon filing the resignation with the Executive Director").

[10] 5 O.S.2011, Ch. 1, App. 1-A, RGDP, Rule 8.2:
Upon receipt of the required affidavit, the Commission shall file it with the Clerk of the Supreme Court and the Supreme Court may enter an order approving the resignation pending disciplinary proceedings. A lawyer who so resigns shall only be permitted to apply for reinstatement after the lapse of five (5) years and under the provisions of Rule 11.

[11] See, e.g., In re Morgan, 2014 OK 110, Â¶Â¶ 4-5, 340 P.3d 1, 2-3 (application for reinstatement was timely when based upon Court's determination of the effective date of resignation pending discipline).

[12] 5 O.S.2011 Ch. 1, App. 1-A, RGDP, Rule 8.1(c) (no application for reinstatement may be filed prior to the lapse of five years from the effective date of the resignation); State ex rel. Oklahoma Bar Ass'n v. Bourland, 2001 OK 12, Â¶ 12, 19 P.3d 289; In re Reinstatement of Hird, 2001 OK 28, 21 P.3d 1043. See supra note 10, stating 5 O.S.2011 Ch. 1, App. 1-A, RGDP, Rule 8.2.

[13] 5 O.S.2011 Ch. 1, App. 1-A, RGDP, Rule 11.1(b); State ex rel. Oklahoma Bar Ass'n v. Heinen, 2003 OK 36, Â¶ 9, 84 P.3d 708, 709.

[14] State ex rel. Oklahoma Bar Ass'n v. Williams, 2009 OK 88, Â¶ 2, 228 P.3d 1195 (citing 5 O.S.2001 Ch. 1, App. 1-A, Rule 6.16, Rules Governing Disciplinary Proceedings); State ex rel. Oklahoma Bar Ass'n v. Anton, 2007 OK 84, Â¶ 13, 175 P.3d 364, 368 (same); State ex rel. Oklahoma Bar Ass'n v. O'Neal, 2007 OK 13, Â¶ 13, 154 P.3d 1270, 1273--1274 (same).

[15] State ex rel. Oklahoma Bar Ass'n v. Carpenter, 1993 OK 86, 863 P.2d 1123, 1128.

[16] State ex rel. Oklahoma Bar Ass'n v. Giger, 2003 OK 61, n.17, 72 P.3d 27, 34.